**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

STATE OF MARYLAND, *et al.*,

                 Plaintiffs,

    v.

CORPORATION FOR NATIONAL AND
COMMUNITY SERVICE, *operating as*
AMERICORPS, *et al*.,

                 Defendants.

No. 1:25-cv-01363-DLB

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A SECTION 705 STAY AND PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................... 1

BACKGROUND .......................................................................................................................... 3

I.  Statutory Background ............................................................................................................. 3

II.  Factual Background................................................................................................................ 3

III.  Procedural History .............................................................................................................. 4

LEGAL STANDARD.................................................................................................................... 5

ARGUMENT ................................................................................................................................. 6

I.  Plaintiffs Cannot Establish Likelihood of Success on the Merits. ......................................... 6

   A.  Plaintiffs Lack Standing to Demand the Broad Relief Sought in their Motion. .................... 6

   B.  To the Extent they are Justiciable, Plaintiffs' Claims Must Be Heard by Another Court or Administrative Body.................................................................................................................. 10

      1.  Insofar as Plaintiffs Challenge Defendants' Actions Concerning their Grants, the Tucker Act Vests Exclusive Jurisdiction Over Such Claims in the Court of Federal Claims. ........... 10

      2.  Administrative Bodies Identified in the Civil Service Reform Act of 1978 are the Exclusive Channels for Any Challenge to the Propriety of Federal Employee Removals..... 15

   C.  Plaintiffs' APA Claims Fail Because They Do Not Seek Judicial Review of a Discrete Final Agency Action. ................................................................................................................. 16

   D. Defendants' Staffing Determinations are Themselves Committed to Agency Discretion. .. 20

   E.  Plaintiffs Fail to Make a Showing That Defendants' Actions Triggered any Statutory Notice and Comment Requirement. ..................................................................................................... 22

   F.  Plaintiffs Cannot Show a Likelihood of Success on their Constitutional Claims. ............... 24

II.  Plaintiffs Have Failed to Demonstrate that They Will Suffer Irreparable Harm Unless the Court Grants the Requested Relief. ............................................................................................ 25

III.  The Balance of the Equities and the Public Interest Support Rejection of the Plaintiffs' Motion.  ...................................................................................................................................... 28

IV.  Plaintiffs Should Be Ordered to Post Security in Connection with Any Preliminary Injunctive Relief and this Court Should Stay Relief Pending the Government's Determination of Whether to Appeal. ................................................................................................................... 28

CONCLUSION............................................................................................................................. 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Bioscience, Inc. v. Thompson*,
   269 F.3d 1077 (D.C. Cir. 2001) ............................................... 18

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump,*
   No. 25-CV-03698-SI, 2025 WL 1358477 (N.D. Cal. May 9, 2025) .................... 28

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
   929 F.3d 748 (D.C. Cir. 2019) ............................................... 15

*Appalachian Energy Grp. v. EPA*,
   33 F.3d 319 (4th Cir. 1994) ................................................ 19

*Arizona v. Biden*,
   40 F.4th 375 (6th Cir. 2022) ............................................... 8, 9

*Bennett v. Spear*,
   520 U.S. 154–78 (1997) .................................................... 18

*Bd. of Regents of State Colleges v. Roth*,
   408 U.S. 564 (1972) ....................................................... 24

*Casa de Md., Inc. v. Wolf*,
   486 F.3d 928 (D. Md. 2020) ................................................ 5-6

*Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*,
   333 U.S. 103 (1948) ....................................................... 18

*City of New York v. U.S. Dep't of Def.*,
   913 F.3d 423 (4th Cir. 2019) ............................................... 19

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ....................................................... 1

*Cobell v. Kempthorne*,
   455 F.3d 301 (D.C. Cir. 2006) .............................................. 17

*Coggeshall Dev. Corp. v. Diamond*,
   884 F.2d 1 (1st Cir. 1989) ................................................. 12

*Cousins v. Sec'y of the U.S. Dep't of Transp.*,
   880 F.2d 603 (1st Cir. 1989) ............................................... 18

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
   38 F.4th 1099 (D.C. Cir. 2022) ............................................. 13

*Dalton v. Specter*,
   511 U.S. 462 (1994) ....................................................... 24

*Department of Education v. California*,
    145 S. Ct. 966 (2025) .......................................................................... 10, 11

*Department of Education v. California*
    No. 24A910, 2015 WL 1008354 (Apr. 4, 2025) ............................................ *passim*

*Di Biase v. SPX Corp.*,
    872 F.3d 224 (4th Cir. 2017) ............................................................... 26

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*,
    952 F.2d 802 (4th Cir. 1991) ............................................................... 25

*Drake v. FAA*,
    291 F.3d 59 (D.C. Cir. 2002) ............................................................... 21

*Dreher v. Experian Info. Sols., Inc.*,
    856 F.3d 337 (4th Cir. 2017) ................................................................. 7

*Elgin v. Dep't of the Treasury*,
    567 U.S. 1 (2012) ........................................................................ 15, 16

*EPA v. Brown*,
    431 U.S. 99 (1977) ........................................................................ 18, 19

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021) ........................................................................ 20

*Fed. Election Comm'n v. Akins*,
    524 U.S. 11 (1998) .......................................................................... 8

*Fed. Leasing, Inc. v. Underwriters at Lloyd's*,
    650 F.2d 495 (4th Cir. 1981) ............................................................... 26

*FTC v. Standard Oil Co. of Cal.*,
    449 U.S. 232 (1980) ........................................................................ 19

*Haaland v. Brackeen*,
    599 U.S. 255 (2023) ......................................................................... 9

*Harmon v. Brucker*,
    355 U.S. 579 (1958) ........................................................................ 25

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ........................................................................ 21

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
    174 F.3d 411 (4th Cir. 1999) ............................................................... 29

*Humana of S.C., Inc. v. Califano*,
    590 F.2d 1070 (D.C. Cir. 1978) ............................................................ 22

*Indep. Equip. Dealers Ass'n v. EPA*,
  372 F.3d 420 (D.C. Cir. 2004) ............................................................. 19

*Lampon-Paz v. OPM*,
  732 F. App'x 158 (3d Cir. 2018) ......................................................... 16

*Lincoln v. Vigil*,
  508 U.S. 191 (1993) ................................................................... 20, 21

*Littlefield v. U.S. Dep't of the Interior*,
  85 F.4th 635 (1st Cir. 2023) ............................................................. 20

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...................................................................... 6

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ................................................................... 16, 17

*Maryland v. United States Dep't of Agric.*,
  No. 25-1248, 2025 WL 1073657 (4th Cir. Apr. 9, 2025) ....................................... 7

*Maryland v. United States Dep't of Agric.*,
  No. CV JKB-25-0748, 2025 WL 973159 (D. Md. Apr. 1, 2025) .................................. 7

*Massachusetts v. Mellon*,
  262 U.S. 447 (1923) .................................................................. 9, 10

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) ...................................................................... 5

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*,
  915 F.3d 197 (4th Cir. 2019) ........................................................... 26

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ....................................................................... 6

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................... 5, 28

*Norton v. S. Utah Wilderness All.*
  542 U.S. 55 (2004) ...................................................................... 16

*Opelika Nursing Home, Inc. v. Richardson*,
  356 F. Supp. 1338 (M.D. Ala. 1973) ..................................................... 23

*Pippenger v. U.S. DOGE Serv.*,
  No. 25-CV-1090 (BAH), 2025 WL 1148345 (D.D.C. Apr. 17, 2025) ........................... 14

*Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*,
  87 F.3d 1242 (11th Cir. 1996) .......................................................... 18

*Pub. Citizen v. U.S. Dep't of Just.*,
  491 U.S. 440 (1989) .............................................................................. 7, 8

*Racing Enthusiasts & Suppliers Coal. v. EPA*,
  45 F.4th 353 (D.C. Cir. 2022) ................................................................... 19

*Roe v. Department of Defense*,
  947 F.3d 207 (4th Cir. 2020) ................................................................... 27

*Sampson v. Murray*,
  415 U.S. 61, 94 S. Ct. 937, 39 L.Ed.2d 166 (1974) ................................. 26

*Saul v. United States*,
  928 F.2d 829–42 (9th Cir. 1991) ............................................................. 16

*Slattery v. United States*,
  635 F.3d 1298 (Fed. Cir. 2011) (en banc) .............................................. 11

*Sols. in Hometown Connections v. Noem*,
  No. 8:25-cv-885, 2025 WL 1103253 (D. Md. Apr. 14, 2025) ........................ 14, 15

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .................................................................................... 7

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .................................................................................... 6

*Trudeau v. Fed. Trade Comm'n*,
  384 F.2d 281 (D.D.C. 2005) ..................................................................... 27

*U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*,
  No. 1:25-CV-00465, 2025 WL 763738 (D.D.C. Mar. 11, 2025) .............. 11, 12, 13

*United States v. Fausto*,
  484 U.S. 439 (1988) ............................................................................. 15, 16

*United States v. Texas*,
  599 U.S. 670 (2023) ................................................................................. 8, 9

*Veit v. Heckler*,
  746 F.2d 508 (9th Cir. 1984) ................................................................... 16

*Vt. Yankee v. Nat. Res. Def. Council, Inc.*,
  435 U.S. 519 (1978) ......................................................................... 20, 21, 22

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ......................................................................................... 5

**Statutes**

5 U.S.C. § 553 ............................................................................................... 23

5 U.S.C. § 701 ............................................................................................... 21

5 U.S.C. § 704 ........................................................................................................ 18

5 U.S.C. § 705 ........................................................................................................ 4, 5

5 U.S.C. § 706 ........................................................................................................ 18

28 U.S.C. § 1346 .................................................................................................... 12

28 U.S.C. § 1491 ............................................................................................... 11, 12

42 U.S.C. § 1 ....................................................................................................... 3, 4

42 U.S.C. § 3 ....................................................................................................... 3, 4

42 U.S.C. § 502 .................................................................................................... 24

42 U.S.C. § 12501 .................................................................................................. 3

42 U.S.C. § 12561 ................................................................................................ 13

42 U.S.C. § 12572 ....................................................................................... 7, 24, 29

42 U.S.C. § 12581 ......................................................................................... *passim*

42 U.S.C. § 12612 .................................................................................................. 2

42 U.S.C. § 12636 ................................................................................................ 23

42 U.S.C. § 12653 ................................................................................................ 13

42 U.S.C. §§ 12651 ................................................................................................ 3

**Rules**

Fed. R. Civ. P. 65 ........................................................................................... 3, 28

**Regulations**

45 C.F.R. § 2540.400 ........................................................................................... 24

Implementing the President's 'Department of Government Efficiency' Workforce Optimization
  Initiative, Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025) ...................................... 3

Implementing the President's 'Department of Government Efficiency' Cost Efficiency
  Initiative.,      Exec. Order No. 14222, 90 Fed. Reg. 11095 (Feb. 26, 2025) .................... *passim*

## **INTRODUCTION**

Defendants respectfully submit this opposition to Plaintiffs' Request for a Section 705 Stay and a Preliminary Injunction, ECF No. 5-1 ("Pls.' Mot."). Plaintiffs are twenty-four states and the District of Columbia ("Plaintiff States"). They challenge a host of actions that the Corporation for National and Community Service ("AmeriCorps") has taken or may take to comply with Executive Orders 14,210 and 14,222.

Plaintiffs seek an extraordinary nationwide preliminary injunction or Section 705 of the Administrative Procedure Act ("APA") (i) revoking AmeriCorps' decision to place staff on administrative leave and/or conduct a reduction in force ("RIF"), (ii) barring the termination of AmeriCorps grants, and (iii) revoking the decision to release National Civilian Community Corps ("NCCC") members. But Plaintiffs cannot carry the high burden necessary to obtain any of that relief.

At the outset, Plaintiffs face numerous dispositive jurisdictional obstacles. Plaintiffs' motion challenges not only specific Plaintiff grants that have already been terminated but also staffing and grant termination actions that Plaintiffs speculate *may* injure them in the future. *See* Madden Decl. (New Jersey) ¶ 14, ECF No. 5-31 (emphasis added) ("This reduction in staff *may* cause significant delays in processing drawdowns."); Nair Decl. (New Mexico) ¶ 22, ECF No. 5-33 (emphasis added) (evaluating "what, if any, legal exposure the State *may* face" related to AmeriCorps member dismissals and grant terminations.); Matthews Decl. (Mass.) ¶ 12, ECF No. 5-19 (emphasis added) (stating that AmeriCorps members enrolled in undergraduate or graduate coursework "*may* be forced to withdraw . . . ."); Connolly Decl. (Mich.) ¶ 10, ECF No. 5-27 (emphasis added) ("Without the AmeriCorps grant funding, EGLE *may* be forced to end" the program.). Article III does not permit challenges to agency actions that might cause only speculative injury to Plaintiffs—and it does not permit challenges to actions that will not affect Plaintiffs at all. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (no standing if predictions are inherently speculative, relying on a "highly attenuated chain of possibilities.").

Nor can Plaintiffs circumvent the jurisdictional bars that prevent litigation of their claims before this Court.  Plaintiffs label all steps that Defendant agency may have taken or may take in the future to comply with Executive Order 14,210 as agency "dismantling."  Pls.' Mot. at 18.  But in reality, Plaintiffs' grievances target two broad categories of disparate agency activities: administration of grant agreements and personnel decisions.  None of these claims may be litigated before this Court.  As the Supreme Court recently emphasized, the Tucker Act requires litigation over the disbursement of funds pursuant to grant agreements and challenges to grant terminations to occur before the Court of Federal Claims.  *See Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025).  Following this direction, courts have dissolved a temporary restraining order that had required an agency to reinstate terminated grants and prohibited the agency from terminating other grants; in so doing, the court cited "the Supreme Court's unmistakable directive" that the proper forum for such a case is the Court of Federal Claims.  Elec. Order, *Mass. Fair Hous. Ctr* v. *Dep't of Hous. and Urban Dev.*, No. 3:25-cv-30041-RGS (D. Mass. Apr. 14, 2025), ECF No. [42]; *Consol. Edison Co. of New York v. U.S., Dep't of Energy*, 247 F.3d 1378, 1385 (Fed. Cir. 2001) ("This court and its sister circuits will not tolerate a litigant's attempt to artfully recast its complaint to circumvent the jurisdiction of the Court of Federal Claims.").  Plaintiffs also cannot challenge the agency's decision to release NCCC members from service because implementation of the NCCC program is left entirely to agency discretion under 42 U.S.C. § 12612(a).  Nor can Plaintiffs challenge the agency's workforce reductions here (or at all).  Rather, Congress has enacted comprehensive statutory schemes governing the review of federal agencies' employment decisions.  Those schemes give no rights to those outside the employment relationship, like Plaintiffs here, and therefore preclude review of such claims, which must instead be channeled to administrative agencies—as multiple courts have recently held.

For these and other reasons discussed herein, Plaintiffs cannot show a likelihood of success on their claims.  Indeed, none of the four factors informing whether a party is entitled to preliminary relief favors entry of an injunction.  Plaintiffs have made no showing of cognizable irreparable harm likely to result in the absence of the broad relief they seek, particularly in the

2

exceptional context of a preliminary injunction, and the balance of equities and the public interest cut against the Plaintiffs' request.

The Motion should be denied.  However, if the Court enters a preliminary injunction, it should at most be limited to the Plaintiff States that demonstrate standing and irreparable harm, this Court should require the payment of an appropriate bond pursuant to Rule 65, and it should stay any injunction pending appeal.

## BACKGROUND

### I.    Statutory Background

AmeriCorps is a government corporation led by a Board of Directors (the "Board") and a Chief Executive Officer ("CEO").  42 U.S.C. §§ 12651; 12651(a); 12651(c).  The Board and the CEO are appointed by the President with the advice and consent of the Senate.  *Id*. §§ 12651a(a)(1); 12651c(a).

Congress created AmeriCorps to (among other things) "renew the ethic of civic responsibility and the spirit of community and service throughout the varied and diverse communities of the United States," 42 U.S.C. § 12501(b)(2); "build on the existing organizational service infrastructure of Federal, State, and local programs, agencies, and communities to expand full-time and part-time service opportunities for all citizens," *id.* § 12501(b)(7); "leverage Federal investments to increase State, local, business, and philanthropic resources to address national and local challenges," *id.* § 12501(b)(17); and "support institutions of higher education that engage students in community service activities and provide high-quality service-learning opportunities." *Id.* § 12501(b)(18).  As part of its responsibilities, AmeriCorps issues grants to fund a wide variety of programs in furtherance of its mission.  *Id.* § 12581.

### II.    Factual Background

On February 11, 2025, President Trump issued Executive Order No. 14,210, titled "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative."  Exec. Order No. 14210, 90 FR 9669 (Feb. 11, 2025).  The Order calls for the elimination of "waste, bloat, and insularity."  *Id.* § 1.  To achieve these goals, the Order directs

agency heads to "promptly undertake preparations to initiate large-scale reductions in force (RIFs)
. . . ." *Id*. § 3(c).

On February 26, 2025, President Trump issued Executive Order No. 14,222, titled
"Implementing the President's 'Department of Government Efficiency' Cost Efficiency
Initiative." Exec. Order No. 14222, 90 Fed. Reg. 11095 (Feb. 26, 2025). The Order calls for a
"transformation in Federal spending on contracts, grants, and loans to ensure Government
spending is transparent. . . ." *Id*. § 1. The Order directs every federal agency to "submit a plan to
reduce the size of the Federal Government's workforce," and to "promptly undertake preparations
to initiate large-scale reductions in force (RIFs)." Exec. Order No. 14,210, § 3(a)-(c), 90 Fed.
Reg. at 6970.

In accordance with the Executive Orders, reorganization efforts are currently underway at
AmeriCorps.

## III.    Procedural History

On April 29, 2025, Plaintiff States filed a Complaint for Declaratory and Injunctive Relief.
Compl. The Complaint asserts five counts: (1) Count I—actions contrary to law under the APA
"by closing AmeriCorps programs en masse and terminating the staff and resources AmeriCorps
needs to carry out its mission," and by closing "approximately $400 million worth" of AmeriCorps
grants and/or programs without providing Plaintiff States with notice or an opportunity to be heard,
and acting "without a legitimate or legal basis," as well as "defying Congress's directive" to make
any significant changes to program requirements or policy "only through public notice and
comment rulemaking," *id.* ¶¶ 207-17; (2) Count II—notice and comment violations under the
APA, *id.* ¶¶ 218-25; (3) Count III—arbitrary and capricious abuse of discretion under the APA,
*id.* ¶¶ 226-31; (4) Count IV—violation of the separation of powers doctrine by usurping legislative
authority and the failure to comply with the Take Care Clause, *id.* ¶¶ 232-37; (5) Count V—
equitable relief from *ultra vires* executive action, *id.* ¶¶ 238-42. Plaintiffs assert these claims
against Defendants AmeriCorps and Jennifer Bastress Tahmasebi, in her official capacity as
interim head of AmeriCorps.

4

A week later, Plaintiffs filed a Request for a Preliminary Injunction. Pls.' Mot. Plaintiffs request that the Court issue a stay under 5 U.S.C. § 705 of AmeriCorps' plans to effectuate the Executive Orders. *Id*. at 1-2. Plaintiffs also request an order enjoining Defendants from implementing the Executive Orders. *Id*. They seek an order barring Defendants from implementing or enforcing "actions to dismantle AmeriCorps" including:

   A. The decision on or around April 15, 2025, to release all NCCC members from the AmeriCorps program effective April 30, 2025, limited to NCCC members assigned to placements in Plaintiff States;

   B. The decision on or around April 15, 2025, to place approximately 85% of AmeriCorps staff on administrative leave;

   C. The decision on or around April 24, 2025, to institute a reduction in force for AmeriCorps staff; and

   D. The decision on or around April 25, 2025, to terminate 1,031 AmeriCorps programs and associated funding, limited to programs located in Plaintiff States.

*Id*. at 29-30; Pls.' Proposed Ord., ECF No. 5-2 ("Prop. Ord.").

In support of their Motion, Plaintiffs submitted forty-two declarations. *See* ECF Nos. 5-4–5-45. Twenty-three states claim that the Executive Orders and the ensuing federal agency actions to cancel grants and put staff on administrative leave will cause irreparable harm to their State institutions. Nevada and the District of Columbia make no such claims in Plaintiffs' motion or in any supporting declarations.

## LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted). To warrant preliminary relief, the movant must satisfy a four-prong test, establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth factors of the analysis—harm to others and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*,

556 U.S. 418, 435 (2009).  The standard for a stay under Section 705—which applies only to APA claims—is the same as the standard for a preliminary injunction.  *Casa de Md., Inc. v. Wolf*, 486 F. Supp. 3d 928, 950 (D. Md. 2020) ("The factors governing issuance of a preliminary injunction also govern issuance of a § 705 stay.").

Plaintiffs cannot meet the high burden required by a preliminary injunction in this case.

## ARGUMENT

I.    **Plaintiffs Cannot Establish Likelihood of Success on the Merits.**

A.    **Plaintiffs Lack Standing to Demand the Broad Relief Sought in their Motion.**

As a threshold matter, Plaintiffs lack the "irreducible constitutional minimum of standing" required to maintain a suit for the sweeping relief that they seek.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To meet that constitutional requirement, Plaintiffs must establish that they "[have] suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Murthy v. Missouri*, 603 U.S. 43, 57 (2024).  The Supreme Court recently emphasized that "standing is not dispensed in gross."  *Id.* at 61 (quotation omitted) (holding that the court in that case had erred by treating the plaintiffs and defendants, respectively, "as a unified whole").  The same requirement for careful analysis applies here.

Plaintiffs' assertions fail to establish standing.  At the threshold, Plaintiffs' theory of injury is inappropriately broad.  Plaintiff States claim injury from Defendants' reduction of personnel and termination of grants because (a) the States did not receive notice in advance, (b) the closure of programs has caused reputational harm to state programs, (c) the terminations require the States to divert resources and require the States to provide additional services, while also causing a loss of tax revenues, and (d) the inability to select subgrant recipients and propose changes in AmeriCorps policy.  Pls.' Mot. at 12-13, 20, 27.  This standing argument is flawed in several ways.

First, an "informational injury," i.e., the failure to receive notice, on its own does not create Article III standing.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021).  So simply pointing to the failure to provide the allegedly required statutory-based notice is insufficient for

6

injury. Instead, the asserted informational injury must cause "real" harms that "are of the type that have traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) (citation omitted). Plaintiff States have failed to identify such harms relating to the alleged statutory right to notice. Plaintiffs assert that under 42 U.S.C. § 12572, Defendants had an obligation to provide "the required advance notice" of a change in agency policy. Pls.' Mot. at 12. Even assuming for the purposes of the standing inquiry that Plaintiffs state a claim, they cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Rather, the failure of Plaintiff States to identify any concrete injury relating to the alleged statutory right of notice is fatal to this claim. *Dreher* 856 F.3d at 346 (finding no standing when plaintiff failed "to identify either a common law analogue or a harm Congress sought to prevent" thus plaintiff "is left with a statutory violation divorced from any real world effect.").

What is more, the Fourth Circuit recently stayed a decision in a similar case arising out of the District of Maryland. *See Maryland v. United States Dep't of Agric.*, No. 25-1248, 2025 WL 1073657 (4th Cir. Apr. 9, 2025). The district court found that although the States' injuries in that case were informational, such injuries were cognizable injuries in fact. *Maryland v. United States Dep't of Agric.*, No. CV JKB-25-0748, 2025 WL 973159 at *5 (D. Md. Apr. 1, 2025). The district court further reasoned that because of claims similar to the current dispute—no advance notice of RIFs, and a generalized increase to downstream costs to the States—that such States have or will soon experience injuries. *Id.* *5-8. The Fourth Circuit stayed that decision, thus implicitly rejecting the district court's reasoning. Accordingly, as the present case is similarly situated to the case where the Fourth Circuit stayed the injunction, this Court should find that Plaintiff States fail to obtain standing here.

Even if Plaintiffs' claimed "statutory right of notice" alone could give rise to an "informational injury" that constitutes an injury-in-fact, they cannot establish redressability for that injury. Specifically, a plaintiff seeking injunctive relief on a theory of informational injury

must assert that a judicial order would lead him to obtain information he lacks—"[a]s when an agency denies requests for information under the Freedom of Information Act." *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 449 (1989); *see also, e.g., Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998). Here, at least as to grant terminations and employee actions that have already occurred, the Plaintiff States do not allege that any information is presently being withheld from them. Any informational injury no longer exists and favorable decision will not remedy the "informational injury" here. A basic mismatch exists between the informational injury the states assert (failure to receive grant termination and employee removal notices) and the sweeping remedy requested here (reinstatement of the grants and removing employees from administrative leave). That relief does nothing to remedy the states' asserted informational injury because it does not provide Plaintiff States the information that they alleged was not provided.

Second, Plaintiffs identify purported "downstream" harms to state resources. Pls.' Mot at 19 ("absent temporary relief . . . AmeriCorps resources are pulled from state governments."); *id.* at 22 (claiming irreparable harm because "Plaintiff States and their service programs are forced to divert resources . . . ."). These cannot suffice in light of *United States v. Texas*, 599 U.S. 670, 674 (2023). *See, e.g.*, Pls.' Mot. at 22, 25 (citing "distraction" of core agency functions and need to "provide additional services" as purported injury). There, the Supreme Court rejected a theory of state standing materially similar to that advanced here. The gist of plaintiffs' theory in *Texas* was that States could sue based on "downstream" costs imposed and resources expended in response to a federal government action. *Texas*, 599 U.S. at 674 (citing the obligation to "supply social services such as healthcare and education" to additional persons). The Supreme Court disagreed. "[I]n our system of dual federal and state sovereignty, federal policies frequently generate indirect effects on state revenues or state spending." *Id.* at 680 n.3. And a theory of standing based on those indirect effects is "more attenuated" and less likely to succeed. *Id.*; *accord, e.g., Arizona v. Biden*, 40 F.4th 375, 386 (6th Cir. 2022) (rejecting contention that any federal policy that "imposes peripheral costs on a State creates a cognizable Article III injury").

8

The States here claim similar injuries, but again, these alleged injuries are attenuated. *See, e.g.*, Pls.' Mot. at 24 (claiming that there will be a "significant impact on the University's budget" because students previously receiving AmeriCorps grants will not be able to pay tuition partially subsidized by those grants); *e.g.*, *id.* at 25 (describing the need to provide services to "make up these losses."); *e.g.*, *id.* at 22 (claiming irreparable harm because Plaintiff States are "forced to divert resources."); *e.g.*, Anderson Decl. (Penn.) ¶ 28, ECF No. 5-38 (asserting that "government entities will have to try to fill the gaps that will be left" and will put stress and financial pressures on those entities.). Here, any downstream costs of the grant terminations would come from the States' own social-welfare policy choices. These costs would be discretionary, as opposed to a direct cost imposed upon the States. Such an expansive theory of injury-in-fact cannot be maintained as any alleged injury inflicted upon the States would not just be one predicated on their subjective policy choices, but an injury of their own making as well. Further, as a matter of policy, such a sweeping approach to standing, if followed, would create a boundless approach to the law that would allow States to sue the federal government for near any policy that they feel obligated to step in and provide gaps in funding. *Texas*, 599 U.S. at 674. This would be a bridge too far.

Finally, Plaintiffs likewise lack standing to seek broad relief against the Defendant agency as to other parties that are not plaintiffs before this Court—they can only assert standing, if at all, to remedy injury to themselves. To the extent Plaintiffs seek relief to remedy their citizens' injuries, that would be a *parens patriae* suit, but the Supreme Court has made clear that "'[a] State does not have standing as *parens patriae* to bring an action against the Federal Government,'" *Haaland v. Brackeen,* 599 U.S. 255, 295 (2023) (quoting *Alfred L. Snapp & Son, Inc., Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 610 n.16 (1982)); *see also Massachusetts v. Mellon*, 262 U.S. 447, 485–86 (1923) ("it is no part of [a State's] duty or power to enforce [its citizens'] rights in respect of their relations with the federal government. In that field it is the United States, and not the state, which represents them as *parens patriae*"). Plaintiffs do not have standing to seek injunctive relief regarding assistance that is disbursed directly or otherwise provided via direct services to entities or citizens other than the Plaintiff states in this

suit. *See e.g.* McGuiness Decl. ¶¶ 4-7 ECF No. 5-20 at 1-3 (citing that a private non-profit had been affected by the delay to the grant making and award process). For the reasons explained further herein, Plaintiffs are not likely to prevail on the merits of their claims, and the Court should deny relief in full. To the extent the Court is inclined to grant any relief, Article III—and the related requirement that the remedy sought "be limited to the inadequacy that produced the injury in fact that the plaintiff has established," *Gill* v. *Whitford*, 585 U.S. 48, 68 (2018) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (2018))—necessitates that any relief be drawn narrowly to address only demonstrated injuries to Plaintiffs in this case.

**B.  To the Extent they are Justiciable, Plaintiffs' Claims Must Be Heard by Another Court or Administrative Body.**

While Plaintiffs characterize their claims as challenges to what they call the "[d]ismantling of AmeriCorps," a purported "dismantling" is not itself a final agency action. *See* Pls.' Mot. at 18. Rather, Plaintiffs' claims are aimed either at delays or terminations of grants and personnel reductions. Rather, a so-called "dismantling" would just be a collection of separate agency actions—and to the extent those actions involve grant terminations or personnel actions, those actions are not reviewable in this court.

**1.  Insofar as Plaintiffs Challenge Defendants' Actions Concerning their Grants, the Tucker Act Vests Exclusive Jurisdiction Over Such Claims in the Court of Federal Claims.**

Some of AmeriCorps' activities challenged in this suit involve the termination of grant agreements. Plaintiffs challenge these grant terminations as part of their lawsuit. *See*, *e.g.*, Pls.' Mot. at 6 (citing termination of grants); ); *see also* Moua Decl. ¶ 44, ECF No. 5-7 (citing delays of grant awards); *see also* Pls.' Mot. at 6 ("Defendants immediately terminated more than 1,000 service programs, representing nearly $400 million in associated grants."); *see also id.* at 25 (claiming irreparable harm when "Defendants wrongly terminated hundreds of state subgrants . . . ."); *see also* Pls.' Proposed Ord. at 3, ECF No. 5-2 (requesting the Court to vacate AmeriCorps' "terminat[ion of] approximately 1,031 AmeriCorps programs and associated funding . . . ."). But because—as the Supreme Court recently emphasized—Congress vested the Court of Federal

10

Claims with exclusive jurisdiction over such claims, this Court lacks jurisdiction over such grant terminations, whether challenged independently, or as part of each agency's larger compliance with Executive Order 14,222. *California*, 145 S. Ct. at 868 (per curiam) ("the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA" because "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'").

> In *California*, the Supreme Court explained:
>
> The APA's waiver of sovereign immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Nor does the waiver apply to claims seeking "money damages." *Ibid*. True, a district court's jurisdiction is "not barred by the possibility" that an order setting aside an agency's action may result in the disbursement of funds. *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988). But, as we have recognized, the APA's limited waiver of immunity does not extend to orders "to enforce a contractual obligation to pay money" along the lines of what the District Court ordered here. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002). Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).

*California*, 145 S. Ct. at 968. *See also U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, No. 1:25-CV-00465, 2025 WL 763738 at *4 (D.D.C. Mar. 11, 2025) (explaining that the D.C. Circuit has long "interpreted the Tucker Act as providing the *exclusive* remedy for contract claims against the government" (quoting *Transohio Sav. Bank v. Dir. Off. Of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992)), *appeal docketed*, No. 25-5066 (D.C. Cir. Mar. 14, 2025)).

The Tucker Act, 28 U.S.C. § 1491(a)(1), provides for judicial review of breach claims for express or implied contracts over $10,000 in the Court of Federal Claims (or district court for claims less than $10,000) "unless such jurisdiction was explicitly withheld or withdrawn by statute." *Slattery v. United States*, 635 F.3d 1298, 1321 (Fed. Cir. 2011) (*en banc*). The D.C. Circuit has long "interpreted the Tucker Act as providing the *exclusive* remedy for contract claims against the government." *U.S. Conf. of Catholic Bishops*, 2025 WL 763738, at *4 (quoting *Transohio Sav. Bankl*, 967 F.2d at 609 (emphasis in original)). Put another way, "[t]he only

remedy to which the United States has consented in cases of breach of contract is to the *payment of money damages* in either the Court of [Federal] Claims, if the amount claimed is in excess of $10,000, 28 U.S.C. § 1491(a)(1), or the district courts, where the amount in controversy is $10,000 or less. 28 U.S.C. § 1346(a)(1)." *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989) (emphasis in original). And "[f]ederal courts do not have the power to order specific performance by the United States of its alleged contractual obligations." *Id.* at 3.

The Supreme Court's conclusion was foreshadowed in *United States Conference of Catholic Bishops v. U.S. Department of State*, which amplifies upon *California*'s reasoning. 2025 WL 763738. In that case, a grantee that had been receiving funds via cooperative agreements with the State Department sought a temporary restraining order preventing the State Department from terminating cooperative agreements with that grantee. *Id.* at *2–3. The court noted that the grantee had millions of dollars in requested reimbursements pending and that without ongoing funding the grantee claimed "thousands of refugees already in its care would soon lack enough support." *Id.* at *2. Nonetheless, the court declined to grant preliminary relief, holding the Tucker Act stripped it of jurisdiction to entertain such a claim. *See id.* at *4–8. The court explained that "the ultimate inquiry of whether a claim is 'essentially a contract action' turns on two key considerations: '[t]he source of rights upon which the plaintiff bases its claims and the type of relief sought." *Id.* at *5 (quoting *Albrecht v. Comm. on Emp. Benefits of Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004)). The court found the latter factor to be dispositive, reasoning that the relief the plaintiff sought in that case "sounds in contract." *Id.* (quoting *Albrecht*, 357 F.3d at 68). There, as here, the grantee sought an order enjoining the government from taking steps to give effect to a letter terminating the plaintiff's grant. *See id.* As the Court explained, however, "[s]tripped of its equitable flair, the requested relief seeks one thing: [plaintiff] wants the Court to order the Government to stop withholding the money due under [its grant agreements]. In even plainer English: [the plaintiff] wants the Government to keep paying up. Thus [the plaintiff] seeks the classic contractual remedy of specific performance." *Id.* at *7 (quotation omitted). The court held that treating the remedies sought in that case as equitable "would be to distort the obvious" since

plaintiffs asked the court "to reverse the Government's decision to cease a financial relationship with the [plaintiff]." *Id.*

Here, Plaintiffs' claims are grounded in the alleged need for undisrupted funding pursuant to grant agreements with AmeriCorps. *See* Pls.' Mot. at 18 (stating that Plaintiff States were irreparably harmed when "their AmeriCorps programs and those providing critical support" were closed); *id.* at 19 ("Plaintiff States face current and impending irreparable harm as their AmeriCorps programs are terminated . . . ."); *id* at 13 (alleging a violation of federal law because the agency did not spend the full amount of its AmeriCorps State and National grants ("ASN")). While Plaintiff complains of cuts to "programs," [cite] the funding of ASN programs, the bucket of money Plaintiffs seem to focus on the most, are promulgated through grants. *See generally* 42 U.S.C. § 12581(e). The heart of this action, then, is a request to prevent the termination of those programs that are funded by grants or to enforce the monetary obligations of the government pursuant to those agreements.

For purposes of the Tucker Act, Plaintiffs' grant agreements are contracts because they set out obligations that must be fulfilled in exchange for consideration from the government. Indeed, Congress has made clear that any funds distributed to grantees like those whose terminations Plaintiffs challenge are paid via grant agreements, *i.e.* contracts between the agency and the grantees. *See* 42 U.S.C. § 12561(b) ("The Corporation . . . is authorized to make grants to, and enter into contracts . . . ."); *id.* § 12653(a) ("The Corporation may carry out [activities] . . . through grants, contracts, and cooperative agreements with other entities"). This is true regardless of whether Plaintiffs frame those as "programs" or "grants"—they are governed by and paid via contract. *See Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099 (D.C. Cir. 2022) (cautioning against "creative drafting of complaints . . . to avoid the jurisdictional consequences of the Tucker Act" (cleaned up)).Plaintiffs attempt to sidestep the Tucker Act's jurisdictional mandate by casting their claims as requests for equitable relief stemming from statutory mandates. *See* Pls.' Mot. at 16-18 ("The claims are founded in the Constitution and federal statutes and regulations, and the relief sought is purely equitable—to enjoin the closure of those programs and

13

the associated shuttering of the agency.").  Notwithstanding Plaintiffs' artful pleading, Plaintiffs cannot dress up their Tucker Act claims in the garb of an APA cause of action for equitable relief when the requested relief is all the same: reopening the spigot of grant disbursements.  Their purported entitlement to funds does not come directly from statute, and it certainly does not come from the text of the Constitution itself.  It comes from grant agreements.  *Id.* at 13 (citing an entitlement to grants originating from statutory instruction).  Those grants are contracts, and suits challenging their termination—and Plaintiffs' demand that the government keep paying funds out from these terminated grants—belong in the Court of Federal Claims.[1]  *Am. Ass'n of Colleges For Teacher Educ. v. McMahon*, No. 25-1281 (4th Cir. Apr. 10, 2025), ECF No. 30 (staying a district court's preliminary injunction in a case involving education-related grants in light of the Supreme Court's *Department of Education* decision); *see also Sols. in Hometown Connections v. Noem*, No. 8:25-cv-885, 2025 WL 1103253, at *11 (D. Md. Apr. 14, 2025) (denying motion for emergency relief challenging the termination of certain grants in light of the Supreme Court's order and concluding that the plaintiffs' APA claims were "in essence contract claims against the United States for which the . . . Court of Federal Claims has exclusive jurisdiction").

Because Plaintiffs seek to ensure the government's continued compliance with the terms of their grant agreements, their claims sound in contract.  Indeed, Plaintiffs' Motion and accompanying affidavits repeatedly emphasize that uninterrupted grant funding is necessary to ensure that continued viability of their programs—affirming that is the contractual remedy they seek.  In other words, Plaintiffs want the government to keep paying pursuant to those agreements.  As such, jurisdiction for Plaintiffs' claims related to those grant agreements lies exclusively in the Court of Federal Claims.  Because Plaintiffs cannot establish jurisdiction, they cannot succeed on

---

[1] Unsurprisingly, then, courts around the country have understood the Supreme Court's order to "deprive this Court of the authority to consider claims sounding in contract or to enjoin further termination of contracts, even if they are styled as APA claims."  *Pippenger v. U.S. DOGE Service*, No. 25-CV-1090 (BAH), 2025 WL 1148345, at *5 (D.D.C. Apr. 17, 2025); Per Curiam Order, *United States Conference of Catholic Bishops v. State*, No. 25-5066 (D.C. Cir. Mar. 28, 2025), ECF No. 2108313 (denying motion for injunction pending appeal in grant termination case).

the merits of claims related to grant agreements, and their request for extraordinary injunctive relief should be rejected on that basis alone.

> **2. Administrative Bodies Identified in the Civil Service Reform Act of 1978 are the Exclusive Channels for Any Challenge to the Propriety of Federal Employee Removals.**

Plaintiffs also challenge AmeriCorps' employment actions, i.e., AmeriCorps' recent Reductions in Force.  Specifically, Plaintiffs assert that Plaintiff States' burdens "have been exacerbated by the announced RIFs, which have impeded Service Commissions' normal communications with their federal counterparts." *Id.* at 23.  And averring that Defendants' decision to "tear apart AmeriCorps" was consummated from the termination of grants and "placing approximately 85% of its staff on administrative leave prior to their firing." *Id.* at 10.  Federal law does not permit Plaintiffs to employ an APA action to challenge the removal of federal employees.

Rather, in the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111, Congress established a comprehensive framework for evaluating adverse employment actions against federal employees and presenting an integrated scheme of both administrative and judicial review of challenged personnel practices of challenged personnel practices. In so doing, Congress balanced "the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 445 (1988). With limited exceptions not relevant here, Congress explicitly sought to reduce the participation of the federal courts, preferring the use of the CSRA's grievance procedures over all other remedies.

Specifically, in passing the CSRA, Congress made the Office of Special Counsel, the Merit Systems Protection Board ("MSPB"), and the Federal Labor Relations Authority ("FLRA") the exclusive means for federal employees, applicants, labor unions and other interested parties to raise challenges to final, non-discrimination-related, adverse employment actions. *See United States v. Fausto*, 484 U.S. 439, 455 (1988), even when those disputes involve constitutional claims, *see Elgin v. Dep't of the Treasury*, 567 U.S. 1, 10–15 (2012) (citation omitted); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019).

15

The Supreme Court has long recognized that Congress established the CSRA as a comprehensive scheme covering all matters involving federal employment. *See Fausto*, 484 U.S. at 455. Indeed, the Supreme Court has held that, even if a federal employee was raising constitutional claims, the CSRA imposes an "implied preclusion of district court jurisdiction[.]" *Elgin*, 567 U.S. at 12. The CSRA thus precludes "precludes courts from providing supplemental remedies." *Lampon-Paz v. OPM*, 732 F. App'x 158, 161 (3d Cir. 2018); *Saul v. United States*, 928 F.2d 829, 835–42 (9th Cir. 1991) ("Congress is better equipped than we to strike an appropriate balance between employees' interests in remedying constitutional violations and the interests of the government and the public in maintaining the efficiency, morale and discipline of the federal workforce."); *Veit v. Heckler*, 746 F.2d 508, 510–11 (9th Cir. 1984). What is more, as stated above, *see supra* Part I.A., the Fourth Circuit stayed a District of Maryland decision finding that the court retained jurisdiction because the CSRA did not apply. The lower court there reasoned that there was no identity of interests between the government and the fired employees, thus, because the CSRA is only an exclusive review scheme for claims brought by employees or their unions, the district court still retained jurisdiction. But because that decision was stayed by the Fourth Circuit, the same reasoning to the as-applied case should not be heeded. *Maryland*, WL 973159 at *17. Consequently, this Court should follow the Fourth Circuit's lead here.

Because federal law requires channeling of all claims related to federal employment via the administrative bodies that Congress created in the CSRA, this Court lacks jurisdiction to consider Plaintiffs' claims to the extent they challenge the placement of federal employees on leave. Indeed, such a holding is consistent with the Supreme Court's emphasis earlier this month in *California* that the APA does not allow litigants to forestall properly applicable channeling regimes that Congress established. *See California*, 145 S. Ct. at 968.

### C. Plaintiffs' APA Claims Fail Because They Do Not Seek Judicial Review of a Discrete Final Agency Action.

As mentioned above, Plaintiffs' claims also fail because they are not challenging a discrete agency action, but rather a collection of grant terminations, personnel actions, and programmatic

16

activities.  Under the APA, plaintiffs "must direct [their] attack against some particular 'agency action' that causes [them] harm." *Lujan*, 497 U.S. at 891.  And that agency action must be "circumscribed" and "discrete[.]" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). Consistent with these principles, the APA does not permit Plaintiffs to "seek *wholesale* improvement" of agency management "by court decree"—even in the face of allegations of "rampant" violations of law. *Lujan*, 497 U.S. at 891.  "Because 'an on-going program or policy is not, in itself, a final agency action under the APA,' [a court's] jurisdiction does not extend to reviewing generalized complaints about agency behavior." *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (citation omitted).  "Consequently, as each case only presents the court with a narrow question to resolve, [the court] can have no occasion to order wholesale reform of an agency program." *Id.*

Plaintiffs improperly seek wholesale judicial review of the agency's implementation of the Executive Orders.  Indeed, Plaintiffs recognize that their challenge is not tailored to a specific government action but instead challenges what they believe is a "significant change[] to [AmeriCorps] programs requirements, service delivery or policy."  Pls.' Mot. at 12.  Notably, Plaintiffs do not challenge specific grant terminations; specific payments they claim to be entitled to; specific changes to service requirements; or specific personnel terminations—they challenge the entire course of conduct of AmeriCorps.  The APA does not permit such sweeping challenges.

In *Lujan*, the Supreme Court dispelled any notion that such a programmatic challenge can proceed under the APA:

> [I]t is at least entirely certain that the flaws in the entire "program"—consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA, simply because one of them is ripe for review and adversely affects [a plaintiff].

497 U.S. at 892–93 (footnote omitted).  Just as in *Lujan*, Plaintiffs' APA claims seek to bring a collective, programmatic, challenge to the possibility that the agencies will fail to disburse grant funds as they become due and the prospect that they may be unable to comply with generalized

purported statutory obligations given their current staffing decisions. But these are grab-bag challenges to general agency operations, not discrete challenges to concrete agency actions.

Wholesale challenges like Plaintiffs' are impossible to litigate under the mechanics of judicial review that the APA contemplates. "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "APA review typically takes place on the basis of a record compiled by the agency" consisting of the materials considered "in making the challenged decision." *Cousins v. Sec'y of the U.S. Dep't of Transp.*, 880 F.2d 603, 610 (1st Cir. 1989). Wholesale challenges to programmatic decision-making make it impossible for the agency to "compil[e] and organiz[e] the complete administrative record" for the agency action, *see Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 n.2 (11th Cir. 1996), because there is no discrete agency action, as necessary for the parties to proceed to summary judgment. Nor is it possible for the Court to apply the applicable standard of review, *see* 5 U.S.C. § 706, to the agency action. Accordingly, Plaintiffs are unlikely to succeed on their APA claims because they are sweeping programmatic challenges and thus not cognizable under the APA.

Moreover, AmeriCorps' ongoing compliance with the Executive Order does not itself constitute final agency action reviewable under the APA. To constitute final agency action: (1) "the action must mark the consummation of the agency's decisionmaking process" and (2) it "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up).

Under *Bennett*'s first prong, the agencies' ongoing implementation of the Executive Order marks the initiation, not the consummation, of the agency's decision-making process. The agencies' actions reflect decisions by agency leadership to realign their policy goals and actions consistent with the current administration's directives. Those decisions are "preliminary" in nature and "not directly reviewable[.]" *See* 5 U.S.C. § 704. "[They] may be a step, which if erroneous will mature into a prejudicial result[.]" *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S.

18

103, 112 (1948). But that does not make the interim decisions themselves the "consummation of the administrative process" reevaluating the agency's priorities. *Id*. at 113; *see EPA v. Brown*, 431 U.S. 99, 104 (1977) ("For [courts] to review [agency actions] not yet promulgated, the final form of which has only been hinted at, would be wholly novel."); *Appalachian Energy Grp. v. EPA*, 33 F.3d 319, 322 (4th Cir. 1994) (no final agency action where agency "has not taken any action at this point triggering [the court's] power to review its position").

Nor does the agency' attempt to implement the Executive Order satisfy the second *Bennett* prong. Prong two's language includes terms of art reflecting "a 'pragmatic' inquiry that requires courts to examine the 'concrete consequences' of an agency action." *Racing Enthusiasts & Suppliers Coal. v. EPA*, 45 F.4th 353, 358 (D.C. Cir. 2022) (citation omitted). The court must consider the "concrete impact the [agency action] had on [the Plaintiffs]." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004); *see also FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239 (1980) (considering whether agency action had a "'direct and immediate . . . effect on the day-to-day business' of the complaining parties" (citation omitted)); *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) ("This limitation ensures that judicial review does not reach into the internal workings of the government, and is instead properly directed at the effect that agency conduct has on private parties"). Plaintiffs' claims of injury would not stem from the programmatic efforts of the agency writ large, but from specific challenges to specific activities stemming from programmatic plans—from a grant termination (were such terminations reviewable under the APA, which they are not), or the specific cancellation of services to which the Plaintiffs had a legal entitlement.

To be clear: specific grant terminations or specific agency actions might, if the APA otherwise applied, be final agency action. But Plaintiffs do not bring those specific challenges to specific agency actions, they challenge the entirety of AmeriCorps' activities—and Plaintiffs cannot subsume concrete final agency action within the banner of a programmatic challenge more generally.

### D. Defendants' Staffing Determinations are Themselves Committed to Agency Discretion.

Plaintiffs repeatedly complain about Defendants' staffing decisions, which they say may—though they have not yet—hindered the provision of what Plaintiffs claim are the Defendants' legally mandated obligations. But this conflates two distinct inquires: (1) internal agency staffing determinations, on one hand, and (2) specific provision of specific services to them, on the other. The first is committed to agency discretion, and Plaintiffs cannot use their fears about the future provision of the latter to justify challenges to the former, particularly in the absence of concrete actions to terminate statutorily required obligations.

As a result, Plaintiffs are unlikely to succeed on the merits of their arbitrary and capricious claim regarding staffing changes, which involve actions committed to agency discretion by law. "Judicial review under [the arbitrary and capricious] standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Rather, the Court must ensure "that the agency has acted within a zone of reasonableness[.]" *Id*. "[T]he standard of review is highly deferential" in determining whether an action is arbitrary and capricious, *Littlefield v. U.S. Dep't of the Interior*, 85 F.4th 635, 643 (1st Cir. 2023), *cert. denied*, 144 S. Ct. 1117 (2024), and agency action regarding reallocation of resources and reorganizing of priorities after a change in presidential administrations, if reviewable at all, must be afforded highly deferential rational basis review, *cf. Lincoln v. Vigil*, 508 U.S. 191, 193 (1993) (noting that, absent a statutory directive to the contrary, an agency has unreviewable "capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way."). Plaintiffs bear the burden of making such a showing.

Courts lack the power to "dictat[e] to the agency the methods [and] procedures" the agency must use to complete its statutory obligations. *Vt. Yankee v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 544-45 (1978) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Indeed, internal staffing decisions are traditionally left to an agency's discretion. *See id*. at 524 (explaining that the Supreme "Court has for more than four decades emphasized that" even outward facing

"procedures [are] basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments").  To override these principles and enjoin agency leadership from exercising procedural control over their own staff to ensure that agency staff is carrying out statutory obligations or otherwise exercising agency leadership's policies would be an extraordinary violation of the separation of powers.  Such activities are "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  "In determining whether a matter has been committed solely to agency discretion, [courts] consider both the nature of the administration action at issue and the language and the structure of the statute that supplies the applicable legal standards for reviewing that action."  *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002).  Here, each factor shows that Defendants' managerial decisions are committed to agency discretion.

First, these decisions fit neatly among those "categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'"  *Lincoln*, 508 U.S. at 191–92 (quoting 5 U.S.C. § 701).  Individual staffing decisions reflect efforts to determine whether ongoing agency actions "best first the agency's overall policies" under new leadership and "whether agency resources are best spent on" current projects or whether they would be better spent differently.  *Heckler v. Chaney*, 470 U.S. 821 (1985).  "The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities."  *Id*. at 831–32.

Second, Plaintiffs can point to no statute limiting the agency's inherent discretion to make independent staffing decisions.  Again, agencies generally have broad discretion to fashion internal procedures for formulating policies and implementing a statute.  *See Vt. Yankee*, 435 U.S. at 543.  Ultimately, if Plaintiffs are dissatisfied with the provision of specific services in a manner that would constitute final agency action, they may challenge that action.  And they cannot preemptively challenge staffing determinations antecedent to those actions on the fear that the agency may not later be able to comply with any statutory mandates.  But it is the latter challenge Plaintiffs bring, because they cannot bring the former.

**E.  Plaintiffs Fail to Make a Showing That Defendants' Actions Triggered any Statutory Notice and Comment Requirement.**

Plaintiffs further aver that AmeriCorps was required to take certain actions only after notice-and-comment rulemaking.  It was not.

At the outset, the challenged actions "relat[es] to . . . agency management or personnel or to . . . grants" and are therefore exempt from notice-and-comment rulemaking under the plain terms of the APA.  5 U.S.C. § 553(a)(2); *see also Opelika Nursing Home, Inc. v. Richardson*, 356 F. Supp. 1338, 1342 (M.D. Ala. 1973) ("[T]he requirement of notice in the Administrative Procedure Act, 5 U.S.C. § 553(b), is inapplicable when regulations concern matters relating to grants, as do the instant ones."  (cleaned up)); *see also Humana of S.C., Inc. v. Califano,* 590 F.2d 1070, 1082 (D.C. Cir. 1978) "Section 553(a)(2) cuts a wide swath through the safeguards generally imposed on agency action.", and that the statutory exemption still prevails "when 'grants,' 'benefits' or other named subjects are 'clearly and directly' implicated.").

Notwithstanding this general principle, Plaintiffs argue that Defendants violated Section 401 of the 2024 Appropriations Act, which requires notice and comment rulemaking prior to "any significant changes to program requirements, service delivery or policy."  Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, § 401, 138 Stat. 460, 695 (Mar. 23, 2024); Pls.' Mot at 12.  But even if the APA general exemption from notice and comment is preempted by the more specific language of that Act, the actions at issue are beyond the scope of the Act.  Defendants' actions do not constitute a change in program requirements, service delivery or policy.  Plaintiffs do not establish that AmeriCorps changed the "program requirements."  Nor do they show that the agency changed "service delivery" or "service policy" requirements.  Rather, the agency has taken steps to reduce its activities to statutory minimums.  To be sure, the agency terminated a number of grants and released a number of NCCC members from service—but this does not represent a new "service policy."  There is thus no binding requirement of notice-and-comment rulemaking here—and, in any event, the Court should not extend the APA's notice-and-comment requirements

22

to a context, i.e., grant making, that Congress expressly dictated those requirements do not otherwise apply, absent clear language to the contrary.

Second, Plaintiffs assert that AmeriCorps violated 42 U.S.C. § 12572(f)(2) by not providing notice of national service priorities.  The statute states that the agency "shall provide advance notice *to potential applicants* of any national service priorities to be in effect under this subsection *for a fiscal year*."  42 U.S.C. § 12572(f)(2) (emphasis added).  But there has been no statutory abrogation. The statute simply calls for notice—without specifying notice and comment procedures—which have been tendered in the form of grant termination communications, as well as the publishing of the Executive Order in the federal register.  *See* ECF Nos. 1-7, 1-8; Exec. Order No. 14222, 90 Fed. Reg. at 11095.  What is more, the statute calls for notice to *potential applicants*, not applicants like Plaintiff States who *have already* been awarded grants (and are bringing suit based on those grants' termination or potential termination).   Plaintiff States are thus outside the realm of parties contemplated to be injured, notwithstanding the general bar to Article III standing for informational injuries.  Further, the statute contemplates notice only for changes of *national service priorities*.  Statutory notice is not required for changes in *agency priorities*, which relate to the implementation of the Executive Orders.  National service priorities are distinct from agency priorities.  *See* AmeriCorps Notice, "Notice of Funding Opportunity" at 4-5, *available at* https://perma.cc/H97E-P8P4, (last visited May 12, 2025) (establishing funding priorities in the annual Notice of Funding Opportunity publication).  Because the grant terminations were made pursuant to a change in agency priorities, Plaintiffs fail to establish the violation of any notice requirement under 42 U.S.C. § 12572(f)(2).

Third, Plaintiffs rely on 42 U.S.C. § 502(a)(4) and 42 U.S.C. § 12636(a)(2)(B) for the proposition that AmeriCorps was required to provide notice and an opportunity to be heard for those grant recipients whose grants had been terminated.  But Plaintiffs skip over key language in their statutory citation, which makes clear these provisions are inapplicable.  42 U.S.C. § 502(a)(4) reads in part: "The Corporation may . . . suspend or terminate payments under a contract or grant . . . whenever the Corporation determines there is a *material failure to comply with* . . . the applicable

terms and conditions of any such grant or contract . . . ."  42 U.S.C. § 5052(a) (emphasis added); 42 U.S.C. § 12636(a)(2)(B) (same); 45 C.F.R. § 2540.400(b) (same).  These statutes and regulations call for notice and an opportunity to be heard *only when* there is a failure to abide by the terms and conditions of the corresponding grant.  That makes sense—termination in that context would be for cause, and thus the grantee would benefit from due process type protections, given their specific conduct was at issue.  *See The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  In contrast, the terminated grants at present were not terminated because of a failure to follow the material terms of the corresponding grant.  Rather, the agency terminated the grants because of a shift in AmeriCorps priorities.

### F.  Plaintiffs Cannot Show a Likelihood of Success on their Constitutional Claims.

Plaintiffs' constitutional claims alleging violations of the Separation of Powers, *see* Pls.' Mot. at 7-10, are meritless.  As a threshold matter, Plaintiffs' asserted constitutional claims are the same claims about spending cuts,  discussed above, dressed up in constitutional language—as the Supreme Court has confirmed, "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims."  *Dalton v. Specter*, 511 U.S. 462, 473 (1994).

In *Dalton*, the Supreme Court rejected the proposition that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation of powers doctrine." *Id.* at 471.  Not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id*. at 472.  In reaching this conclusion, the Supreme Court carefully "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* (collecting cases).  The Constitution is implicated only if executive officers rely on it as "[t]he only basis of authority" or if the officers rely on an unconstitutional statute. *Id.* at 473 & n.5.  Here, Plaintiffs' claims focus entirely on their contentions that the Defendant agencies have not acted consistent with statutory obligations, not whether the Executive has exceeded its authorities under the Constitution.  Pls.' Mot. at 8-9.  Under *Dalton*, such constitutional claims cannot succeed.

Simply put, a claim that the Executive is exercising authority in a manner that violates a

statute is merely a claim that an official has acted in excess of his statutory authority—it is not elevated to a "constitutional" claim merely because it identifies a conflict between a congressional statute and Executive action. *See Harmon v. Brucker,* 355 U.S. 579, 581 (1958) ("In keeping with our duty to avoid deciding constitutional questions presented unless essential to proper disposition of a case, we look first to petitioners' *non-constitutional claim* that respondent *acted in excess of powers granted him by Congress*." (emphases added)). In other words, the distinction is between when an official claims "statutory authority" for their action—a statutory claim—versus when the official claims to be acting "in the absence of any statutory authority," but pursuant to authority vested by the Constitution itself—a constitutional claim. *See id.* at 473 (emphasis omitted).

The Court's as-applied inquiry with respect to the AmeriCorps grants asks whether the relevant *statute* permits the agency to terminate Plaintiff States' grants. This question is a quintessential "excess of authority" determination. Thus, Plaintiffs' as-applied termination challenge is not bestowed with constitutional dimensions simply because Plaintiffs attempt (and fail) to assert a facial separation-of-powers claim. Plaintiff's case must rise and fall on the claims it chooses to bring. Here, Plaintiff's as-applied "Spending Clause" claim with respect to any specific termination falls at the threshold under *Dalton*.

In sum, for all the reasons discussed above, Plaintiffs cannot show a likelihood of success on their claims.

## II. Plaintiffs Have Failed to Demonstrate that They Will Suffer Irreparable Harm Unless the Court Grants the Requested Relief.

Apart from the lack of any likelihood of success, Plaintiffs also have failed to demonstrate that they will suffer irreparable harm if the Court does not enter the requested preliminary injunction. To show irreparable injury, a plaintiff must make a "clear showing" that it will suffer harm that is "'neither remote nor speculative, but actual and imminent.'" *Direx Israel, Ltd. v. Breakthrough Med. Corp*., 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In addition, harm is irreparable only when it "cannot be fully rectified by the final judgment after trial*." Mountain*

*Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (internal citation omitted).  "Mere injuries, however insubstantial, in terms of money, time and energy necessarily expended in the absence of [an injunction] are not enough." *Roe v. Dep't of Defense*, 947 F.3d 207, 228 (4th Cir. 2020) (internal citations omitted).

In general, economic harm does not compromise "irreparable injury."  This is especially so when anticipated economic losses are recoverable at the end of litigation, because "[b]y definition, a temporary loss is not irreparable."  *Mountain Valley Pipeline*, 915 U.S. at 218; *see also Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974).  Here, the harms pled are all either economic, speculative, or affect third parties rather than the Plaintiffs seeking relief.

Plaintiffs' allegations regarding AmeriCorps illustrate why economic harms generally are not cognizable as "irreparable harm" for purposes of preliminary equitable relief; money is generally fungible, and, unless the very existence of an enterprise is threatened, *see Fed. Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 500 (4th Cir. 1981), a litigant suffering financial loss may be made whole through money damages.  That can happen here via the Court of Federal Claims.  Indeed, in *Department of Education v. California*, the Supreme Court considering an analogous suit found it "compelling" that grantees—that had been granted a temporary restraining order enjoining the government from terminating various education-related grants—"[had] the financial wherewithal to keep their programs running."  145 S. Ct. at 969.  Against that backdrop, the Supreme Court held it was appropriate to stay the temporary restraining order, reasoning that "if [the grantees] ultimately prevail, they can recover any wrongfully withheld funds through suit in an appropriate forum."  *Id.*  Just so in this case. Moreover, there is no actual risk to the "existence of an enterprise" because as Plaintiff States readily concede, they would "divert resources" to plug the gap in grant funding.  Pl.'s Mot. at 22.

Moreover, even if economic injuries were cognizable as irreparable harm:  Plaintiffs' alleged injuries are not irreparable as many of the claims amount to bare speculation, conjecture, or are more distant than imminent.  *See* Kelly Decl. (Colo.) ¶¶ 40-41, ECF No. 5-8 (attempting to

determine how long program can continue with state support alone); *see also* Trent Decl. (Mich.) at ¶ 23 ECF No. 5-28 (noting an interruption to resources); *see also* Darrow Decl. (R.I.) ¶¶ 23-24, ECF No. 5-39 (mentioning disruptions to programs); *see also* Bauer Decl. (Or.) ¶¶ 15-16, , ECF No. 5-36 (speculating of disruptions to programs).  While Maryland could have chosen to bring its own action in an appropriate forum, i.e. the Court of Federal Claims, to litigate whether payment on that grant must be made, there is no authority under which other States with insufficiently plead harms can bootstrap onto Maryland's alleged harm an order that all future payments to it must be made by AmeriCorps, regardless of the President's or agency's judgment.  Yet that is the expansive relief that Plaintiff States now demand.

Nor can unsupported speculation about the risk to "State programs' reputations" be grounds for preliminary relief.  Pls.' Mot. at 20.  "[A]s with all other forms of irreparable harm," however, "the showing of reputational harm must be concrete and corroborated, not merely speculative."  *Trudeau v. Fed. Trade Comm'n*, 384 F.2d 281, 297 (D.D.C. 2005), *aff'd*, 456 F.3d 178 (D.C. Cir. 2006) (citations omitted).  Indeed, many of the dire outcomes that Plaintiffs identify depend on an attenuated chain of possibilities.  *See, e.g.,* Lorenz Decl. (Md.) ¶ 11(b)(v), , ECF No. 5-21 (describing how programs are in jeopardy); Bauer Decl. (Or.) ¶ 19 (describing shaken confidence in "AmeriCorps stability and reliability is impacting recruitments efforts."); Porterfield Decl. (Del.) ¶¶ 19, 22, ECF No. 5-11 (detailing inability to determine which programs can continue).  Perhaps most importantly, for purposes of assessing the relief that Plaintiffs request, Plaintiffs offer no concrete basis upon which to conclude that such dire consequences would obtain during the next couple of weeks[2].

Finally, Plaintiffs allege irreparable harm under the proposition that they are entitled to protect their interests by "selecting subgrant recipients . . . and [being allowed to] comment[] on

---

[2]  It also should be noted that Plaintiffs' claims of irreparable harm would be made all the less likely because of a recent injunction on AmeriCorps and other agency RIFs.  *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1358477 at *24 (N.D. Cal. May 9, 2025).

any proposed change in AmeriCorps priorities." Pls. Mot. at 25. This fails too. Plaintiffs cite 42 U.S.C. § 12572(f)(1)(B) for the proposition that the States are entitled to set policy for their formula grants. *Id.* But the provision makes clear that the "State priorities shall be subject to Corporation review as part of the application process" and says nothing about the States' role in the termination of grant assistance. 42 U.S.C. § 12572(f)(1)(B).

For all these reasons, Plaintiffs have failed to establish irreparable harm that could support the entry of a preliminary injunction; to the extent they have alleged economic harm, none of the Plaintiffs have met the narrow exceptions made for circumstances in which economic harm threatens an entity's very existence or that the disputed funds are not recoverable upon successful conclusion of litigation.

## III.    The Balance of the Equities and the Public Interest Support Rejection of the Plaintiffs' Motion.

A preliminary injunction also is not appropriate because the balance of the equities and the public interest tip in Defendants' favor. *See Nken*, 556 U.S. at 435 (holding that "[t]hese factors merge when the Government is the opposing party"). In this setting, granting the preliminary injunction that Plaintiffs seeks would disrupt the agencies' efforts to comply with Executive Orders 14,222 and 14,210, and act as responsible stewards of public funds.

Additionally, where the government is legally entitled to make decisions about the disbursement or allocation of federal funds but is nonetheless ordered to release the funding, such funds may not be retrievable afterwards. *See California*, 145 S. Ct. at 969 (noting "the Government's representation that it is unlikely to recover the grant funds once they are disbursed" as among the reasons supporting a stay of a temporary restraining order enjoining the Government from terminating various education-related grants).

## IV.    Plaintiffs Should Be Ordered to Post Security in Connection with Any Preliminary Injunctive Relief and this Court Should Stay Relief Pending the Government's Determination of Whether to Appeal.

Finally, to the extent the Court issues any injunctive relief, Defendants respectfully request the requirement of a reasonable bond, per Fed. R. Civ. P. 65(c), considering the financial damages

28

and other costs that injunction will cost Defendants.  As the Fourth Circuit has directed, "[i]n fixing the amount of an injunction bond, the district court should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order."  *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999).  The Fourth Circuit continued: "The amount of the bond, then, ordinarily depends on the gravity of the potential harm to the enjoined party."  *Id*.  As Plaintiffs are, in part, seeking the disbursement of grant funds, the Court should order the posting of a bond equal to the size of any payment that the Court orders on a preliminary basis here.  Without such a protective measure, there may be no way to recover the funds lost to United States taxpayers if the Court were later to find that Defendants were "wrongfully enjoined." *See* Fed. R. Civ. P. 65(c); *cf. California*, 145 S. Ct. at 968-69 ("respondents have not refuted the Government's representation that it is unlikely to recover the grant funds once they are disbursed. No grantee promised to return withdrawn funds should its grant termination be reinstated, and the District Court declined to impose bond") (quotation omitted).

Should the Court enter relief, Defendants request that the Court stay any order pending appeal or, at a minimum, enter a seven-day administrative stay to allow the Solicitor General to determine whether to authorize an appeal and seek emergency appellate relief.

## <u>CONCLUSION</u>

For these reasons, this Court should deny Plaintiffs' Motion for a Section 705 Stay and Preliminary Injunction.

Dated:  May 13, 2025                    Respectfully submitted,

                                        YAAKOV M. ROTH
                                        Acting Assistant Attorney General

                                        ERIC J. HAMILTON
                                        Deputy Assistant Attorney General
                                        Civil Division, Federal Programs Branch

                                        JOSEPH E. BORSON
                                        Assistant Branch Director
                                        Federal Programs Branch

                                        */s/ Sarmad Khojasteh*
                                        SARMAD KHOJASTEH
                                        *Senior Counsel*
                                        U.S. Department of Justice
                                        Civil Division
                                        950 Pennsylvania Avenue, NW
                                        Washington, DC 20530
                                        Tel.: (202) 353-0261
                                        Email: Sarmad.Khojasteh@usdoj.gov

                                        */s/ Pierce J. Anon*
                                        PIERCE J. ANON (N.Y. Bar No. 6184303)
                                        *Trial Attorney*
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street, N.W.
                                        Washington, DC 20005
                                        Tel. (202) 305-7573
                                        Email: Pierce.Anon@usdoj.gov

                                        */s/ Beatrice C. Thomas*
                                        BEATRICE C. THOMAS
                                        *Assistant United States Attorney*
                                        United States Attorney's Office
                                        36 S. Charles Street, 4th Floor
                                        Baltimore, MD 21202
                                        Email: Beatrice.Thomas@usdoj.gov

                                        *Attorneys for Defendants*