# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

STATE OF MARYLAND; STATE OF
DELAWARE; STATE OF CALIFORNIA; STATE
OF COLORADO; STATE OF ARIZONA; STATE
OF CONNECTICUT; DISTRICT OF COLUMBIA,
STATE OF HAWAI'I; STATE OF ILLINOIS;
OFFICE OF THE GOVERNOR *ex rel.* Andy
Beshear, in his official capacity as Governor of the
COMMONWEALTH OF KENTUCKY; STATE OF
MAINE; COMMONWEALTH OF
MASSACHUSETTS; PEOPLE OF THE STATE OF
MICHIGAN; STATE OF MINNESOTA; STATE OF
NEVADA; STATE OF NEW JERSEY; STATE OF
NEW MEXICO; STATE OF NEW YORK; STATE
OF NORTH CAROLINA; STATE OF OREGON;
JOSH SHAPIRO, in his official capacity as
Governor of the COMMONWEALTH OF
PENNSYLVANIA; STATE OF RHODE ISLAND;
STATE OF VERMONT; STATE OF
WASHINGTON; STATE OF WISCONSIN;

        Plaintiffs,

   v.

CORPORATION FOR NATIONAL AND
COMMUNITY SERVICE, operating as
AmeriCorps; and JENNIFER BASTRESS
TAHMASEBI, in her official capacity as Interim
Head of the Corporation for National and
Community Service;

        Defendants.

Civ. No. 25-cv-01363 (DLB)

# PLAINTIFF STATES' REPLY IN SUPPORT OF MOTION FOR 5 U.S.C. § 705 STAY AND PRELIMINARY INJUNCTION

As laid out in the Plaintiff States' opening brief, and 42 supporting declarations,[1] this Administration's dismantling of AmeriCorps is causing immediate and irreparable harm to the Plaintiff States.  In response, Defendants do not dispute any of the salient facts demonstrating their dismantling of AmeriCorps.  Rather, they suggest that their actions over a ten-day period to fire every service member at the National Civilian Community Corps, put 85% of AmeriCorps agency staff on leave pending termination, and close over 1,000 active AmeriCorps programs is merely a "reorganization," Defs.' Resp. at 4, presumably in the same way a wrecking ball "reorganizes" a building into rubble.  Defendants have shuttered State programs, strained State services, and burdened States with unrecoverable administrative costs in a manner that will be impossible to remedy at the conclusion of the litigation.  In sum, Defendants have already done lasting damage to Plaintiff States and to the tradition of public service in America, but this Court can and should mitigate the continuing fallout and grant the requested preliminary injunction.

I.    **This Court has Jurisdiction Over Plaintiffs' Claims**

A.    **Plaintiff States Have Demonstrated Standing and Irreparable Injury**

In their memorandum, Plaintiff States identified five categories of harm that support their standing and entitlement to injunctive relief.  First, Plaintiffs pointed to the cancellation of

---

[1] Plaintiff States also have attached to this reply brief (as Exhibit A) the Declaration of Kelly Daly, president of the AmeriCorps Employees Union, which was filed in *American Federation of Government Employees, AFL-CIO v. Trump*, No. 3:25-cv-03698-SI (N.D. Cal.). Plaintiffs learned of this declaration after filing their motion for preliminary injunction, and Defendants had notice and an opportunity to respond to it in the other case. The Kelly Declaration provides additional detail regarding Defendants' mass termination of AmeriCorps employees. It attests, among other things, that "approximately 90% of the bargaining unit received RIF notices," Kelly Decl. ¶ 25; that only 17 grant portfolio managers remain to manage "the full portfolio of AmeriCorps State and National, AmeriCorps VISTA, and AmeriCorps Seniors projects," a task that "normal[ly] . . . requires hundreds of staff," *id.* ¶ 27; and that "[t]here is no possible way" the "small number of AmeriCorps employees who were not placed on administrative leave" could "perform the work needed to run this agency in compliance with its statutory duties." *Id.* ¶ 30.

numerous AmeriCorps programs directly operated by Plaintiff States or their instrumentalities, *e.g.*, Amend. Moua Decl. (Cal.), Doc. No. 92-2, ¶ 24; Kelly Decl. (Colo.), Doc. No. 5-8, ¶ 34(a); Bringardner Decl. (Ky.), Doc. No. 5-18, ¶ 20; Madden Decl. (N.J.), Doc. No. 5-31, ¶¶ 17, 19; Anderson Decl. (Penn.), Doc. No. 5-38, ¶ 20; Almond Decl. (Wash.), Doc. No. 5-42, ¶¶ 8, 16; Duffy Decl. (Wis.), Doc. No. 5-44, ¶¶ 21–24, as well as the termination of AmeriCorps VISTA and NCCC members who serve at State entities. *E.g.*, Porterfield Decl. (Del.), Doc. No. 5-11, ¶¶ 18–19; Laramee Decl. (Haw.), Doc. No. 5-15, ¶¶ 7–8, 14; Lorenz Decl. (Md.), Doc. No. 5-21, ¶¶ 7(a), 14(d); Lengert Decl. (Me.), Doc. No. 5-26, ¶¶ 2–3, 13(d); Johnson Decl. (N.C.), Doc. No. 5-30, ¶ 8; Cohen Decl. (N.Y.), Doc. No. 5-35, ¶ 8; Bauer Decl. (Or.), Doc. No. 5-36, ¶¶ 21–22, 24; Kolling Decl. (Vt.), Doc. No. 5-40, ¶¶ 7–8, 10.   Defendants cannot rebut such paradigmatic Article III injuries.  The harms are irreparable because, as the declarations make clear, the very existence of these programs is imminently threatened; indeed, some already have closed down.[2]  *Accord Ass'n of Cmty. Cancer Ctrs. v. Azar*, 509 F. Supp. 3d 482, 501 (D. Md. 2020) (plaintiffs irreparably injured when agency "threaten[ed] . . . to cause severe economic losses and to shutter operations").

Second, the States are suffering significant reputational injury to their service programs.

---

[2] Given the chaotic mass cancellation of AmeriCorps programs, the status of certain State programs remains fluid.  Many of Plaintiff States' declarations indicate that certain programs likely cannot operate without federal support.  *See, e.g.*, Clark Decl. (Md.), Doc. No. 5-22, ¶ 10 ("[T]here is simply no way [Frostburg State] University can continue to operate the program this year unless AmeriCorps's termination decision is reversed."); Laramee Decl. (Haw.), Doc. No. 5-15, ¶ 16 ("The steps taken to dismantle AmeriCorps and cancel this grant will effectively terminate [Hawaii's] CCMAC VISTA program.").  While some States anticipate having to support individual programs for a short time without federal reimbursement, *e.g.*, Bullock Decl. (Ky.), Doc. No. 5-17, ¶¶ 17–18, or are exploring options to do so, even programs that can identify limited State resources will likely be unable to provide the same benefits to service members (such as child care and education awards), and thus programs that continue will be unable to operate at the same scale. *See, e.g.*, Trent Decl. (Mich.), Doc. No. 5-28, ¶ 19 (Michigan's State Service Commission "does not have the resources to offer comparable benefits to service members absent AmeriCorps funding," which will likely prevent "some or all" members from continuing service); Johnson Decl. (N.C.), Doc. No. 5-30, ¶ 38 (similar); Patrick Decl. (Wash.), Doc. No. 5-44, ¶ 14 (similar).

Pls.' Mem. at 20. Defendants suggest that those harms "depend on an attenuated chain of possibilities," Defs.' Resp. at 27, but Plaintiff States' declarations establish that reputational injuries are occurring *now*, while programs struggle to secure funding and recruit new members for the coming year. *See, e.g.,* Kelly Decl. (Colo.), Doc. No. 5-8, ¶ 50(f) (noting the loss of private funding due to AmeriCorps instability). Defendants' near-overnight dismantling of AmeriCorps both irreparably damages the reputations of State-run service programs and exacerbates the damage caused by Defendants' program cancellations, by making it difficult or impossible to revive such programs later on. *See also, e.g.*, Bullock Decl. (Ky.), Doc. No. 5-17, ¶ 19 ("[P]otential site partners and potential members for the upcoming year are aware of the reports of lost AmeriCorps funding and have expressed hesitation in committing to the program . . . ."); *accord Jones v. District of Columbia*, 177 F. Supp. 3d 542, 547 (D.D.C. 2016) ("[B]ecause 'injury to reputation and goodwill is not easily measured in monetary terms,' it is 'often viewed as irreparable.'") (quoting 11A Wright et al., *Federal Practice & Procedure* § 2948.1 (3d ed. 2013)).

Third, Defendants' actions have imposed enormous administrative burdens and other costs on State Service Commissions. Pls.' Mem. at 22. The Commissions have spent weeks dealing with the fallout of Defendants' actions, diverting resources from their own service efforts as well as the process of reapplying for next year's funds. *See, e.g.*, Amend. Moua Decl. (Cal.), Doc. No. 92-2, ¶¶ 35–36, 38, 40. Plaintiffs have received no help from AmeriCorps, which has become entirely unresponsive. *See, e.g.*, Blisset Decl. (Ill.), Doc. No. 5-16, ¶ 25. Indeed, so few AmeriCorps staff are left to answer questions that subgrantees have turned to State Service Commissions for help regarding programs they do *not* administer. Darrow Decl. (R.I.), Doc. No. 5-39, ¶ 49. Further, Plaintiff States and their universities will suffer a significant and immediate loss of tuition dollars due to the reduction in AmeriCorps education awards. *See, e.g.,* Clark Decl.

3

(Md.), Doc. No. 5-22 at ¶ 17.  The money, time, and other resources Plaintiff States have lost as a result of the Defendants' actions are irreparable injuries.  *See Ass'n of Am. Publishers v. Frosh*, 586 F. Supp. 3d 379, 395 (D. Md. 2022) (compliance costs and "financial harm" are "irreparable" when government defendants are "immune from suit for retrospective relief") (quoting *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010)).

Fourth, Defendants' actions will cause an immediate spike in demand for State services.  Pls.' Mem. at 24.  Such injuries are not "downstream" costs or asserted as *parens patriae*, as Defendants claim.  Defs.' Resp. at 8–9.  Plaintiff States assert direct injuries from Defendants' unprecedented mass closure of service programs, such as essential disaster relief services. Disaster relief is not "discretionary" or a matter of "social-welfare policy choices," *contra* Defs.' Resp. at 9, and Defendants' termination of these programs already has begun to impede Plaintiff States' response efforts.  *E.g.*, Johnson Decl. (N.C.), Doc. No. 5-30, ¶ 8.  The loss of such programs— along with those supporting State education, public health, and veterans' assistance efforts, to name just a few—will require States to step into the breach with their own resources.  *See DeOtte v. Nevada*, 20 F.4th 1055, 1068 (5th Cir. 2021) (discussing cases where "states established standing because they demonstrated with reasonable probability that [new federal regulations] would cause the state financial injury through strain on its healthcare programs").

Fifth and finally, Plaintiffs are injured from the loss of their rights to comment on Defendants' new priorities, and to select their own grantees.  Pls.' Mem. at 25.  Defendants seem to misapprehend these harms, however.  Plaintiff States have not brought an "informational injury" claim, Defs.' Resp. at 6, much less one that "allege[s] a bare procedural violation, divorced from any concrete harm." *Id*. (citation omitted).  The lack of notice harmed Plaintiff States because it impeded their response to the cuts, *see, e.g.*, Sullivan Decl. (Del.), Doc. No. 5-12, ¶ 42, and because

it prevented Plaintiffs from participating in notice and comment procedures required by governing appropriations law. *See, e.g.*, Clark Decl. (Md.), Doc. No. 5-22, ¶ 7; *Ass'n of Cmty. Cancer Ctrs.*, 509 F. Supp. 3d at 501 (finding irreparable harm when "plaintiffs . . . [were] deprived of the ability to have their comments considered prior to promulgation of a rule"). Similarly, the Plaintiffs States are harmed by the Defendants overriding the Plaintiff States' statutory right to select their own grantees. As Congress intended, Plaintiff States carefully determined priorities for their formula subgrants based on their considered assessment of their States' needs. *See, e.g.*, Kelly Decl. (Colo.), Doc. No. 5-8, ¶¶ 47–55. By arbitrarily displacing those priorities—and, for several States, thereby depriving the State of its entire formula grant, *e.g.*, Trent Decl. (Mich.), Doc. No. 5-28, ¶ 15—Defendants have irreparably injured the States' interests. *Cf. Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001) (holding state suffered irreparable injury when it was "deprived of [its] interests without first having a full and fair opportunity to be heard on the merits").

## B.    The Tucker Act Does Not Apply

Defendants seek to avoid judicial review of their actions by arguing that any lawsuit "involv[ing] the termination of grant agreements" must be shunted to the Court of Federal Claims. Defs.' Resp. at 10. That argument is misplaced. Plaintiffs are not seeking contract damages, and their claims for injunctive relief from the unlawful dismantling of AmeriCorps fall squarely within the Administrative Procedure Act (APA). *Bowen v. Massachusetts*, 487 U.S. 879, 911 (1988); *see Me. Cmty. Health Options v. United States*, 590 U.S. 296, 323–24 (2020) ("The Tucker Act yields . . . when the [APA] provides an avenue for relief.").

As the Supreme Court has made clear, challenges to unlawful agency action that affect the "ongoing relationship between the parties" may proceed under the APA, *Bowen*, 487 U.S. at 905, while the Tucker Act covers claims for "specific sums already calculated, past due." *Me. Cmty.*

5

*Health Options*, 590 U.S. at 327.  In *Bowen*, another APA challenge to a funding determination under a "grant-in-aid program," the Court rejected the argument that a case *solely* involving federal funding must be brought under the Tucker Act.  *Id.* at 898, 901–05; *see also Great-W. Life & Annuity Co. v. Knudson*, 534 U.S. 204, 212 (2002) (claim in *Bowen* "was not merely for past due sums, but for an injunction to correct the method of calculating payments going forward").  "The fact that a judicial remedy may require one party to pay money to another" as a "by-product" of injunctive relief does not remove the entire action from the APA.  *Bowen*, 487 U.S. at 893, 910.

Like in *Bowen*, the Plaintiff States seek prospective, injunctive relief to set aside unlawful agency action affecting the "ongoing relationship between the parties," and are not asserting contract claims for "past due sums."  Plaintiffs challenge a "broad, categorical" action—the decision to dismantle AmeriCorps—and the sources of their claims are the Constitution and the governing statutes; "the terms and conditions of each individual grant . . . *are not at issue*."[3]  *New York v. Trump*, 2025 WL 1098966, at *2 (D.R.I. Apr. 14, 2025).  Furthermore, the Court of Federal Claims "does not have the general equitable powers of a district court to grant prospective relief," *Bowen*, 487 U.S. at 905, and cannot remedy Defendants' disruption of the grant process, denial of education awards, mass layoffs of AmeriCorps staff, or other efforts to dismantle the agency.  Under *Bowen*'s controlling precedent, Plaintiffs' claims for *prospective* relief from agency actions that violate *statutes* can and must be heard under the APA, not the Tucker Act.

The *per curiam* stay order in *Department of Education v. California*, — U.S. —, 145 S. Ct. 966 (Apr. 4, 2025) does not dictate a different result.  *California* did not overrule *Bowen* (which it

---

[3] Defendants make no argument that the Tucker Act somehow precludes non-grant APA claims, much less Plaintiffs' Constitutional separation of powers claim. *See, Strickland v. United States*, 32 F.4th 311, 365 (4th Cir. 2022) (no sovereign immunity for unconstitutional acts); *Colorado v. U.S. Dep't of Health & Hum. Servs.*, No. 1:25-CV-00121-MSM-LDA (D.R.I. May 16, 2025) (deeming Tucker Act inapplicable because States asserted Constitutional and APA claims).

cited approvingly), and the order has limited precedential value. *See Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (mem.) (Kavanaugh, J., concurring) ("The Court's stay order is not a decision on the merits."). In any event, this case is distinguishable from *California*, because Plaintiffs are seeking to hold unlawful Defendants' dismantling of the agency. The vast majority of courts to consider *California* have recognized its limited precedential value and allowed plaintiffs challenging agency dismantling and mass grant terminations to proceed under the APA.[4]

### C.    The Civil Service Reform Act Does Not Apply

Defendants also erroneously argue that Plaintiffs' claims are administratively channeled by the Civil Service Reform Act ("CSRA"). Defs.' Resp. at 15–16. Yet the CSRA, which generally governs employment claims by federal personnel, does not preclude jurisdiction here. Just as they cannot rely on the Tucker Act, Defendants cannot rely on the CSRA to prevent review of the dismantling of AmeriCorps effectuated through the cessation of agency work.

There is a "strong presumption in favor of judicial review" that can be overcome only by "clear and convincing indications that Congress meant to foreclose review." *SAS Inst. v. Iancu*, 584 U.S. 357, 370 (2018) (quoting *Cuozzo Speed Techs. v. Lee*, 579 U.S. 261, 273 (2016)). Defendants only could overcome this presumption by satisfying the two-step framework of *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). A court first asks "whether Congress's intent to preclude district-court jurisdiction is 'fairly discernible in the statutory scheme.'" *Bennett*

---

[4] *See, e.g.*, *Colorado v. HHS*, No. 1:25-cv-121 (MSM), slip op., at *22–23 (D.R.I. May 16, 2025) (public health grants); *Ass'n of Am. Univs. v. Dep't of Energy*, No. 25-CV-10912-ADB, 2025 WL 1414135, at *6 (D. Mass. May 15, 2025) (refusing to "adopt a categorical rule that would see all federal grant funding disputes go to the Court of Claims"); *Cmty. Legal Servs. in E. Palo Alto v. HHS*, No. 25-2808, 2025 WL 1393876, at *3 (9th Cir. May 14, 2025) (federal funding of counsel for unaccompanied children); *Am. Bar Ass'n v. DOJ*, No. 25-CV-1263 (CRC), 2025 WL 1388891, at *6 (D.D.C. May 14, 2025) (federal grant terminations); *Massachusetts v. Kennedy*, No. 25-10814 (WGY), at *8–23 (D. Mass. May 12, 2025) (NIH grant terminations).

*v. U.S. SEC*, 844 F.3d 174, 181 (4th Cir. 2016) (quoting *Thunder Basin*, 510 U.S. at 207). It next asks "whether plaintiffs' 'claims are of the type Congress intended to be reviewed within this statutory structure,'" considering whether (1) "the statutory scheme 'foreclose[s] all meaningful judicial review,'" (2) "the extent to which the plaintiff's claims are 'wholly collateral' to the statute's review provisions," and (3) "whether 'agency expertise could be brought to bear on the . . . questions presented.'" *Id.* (alterations original) (quoting *Thunder Basin*, 510 U.S. at 212–13). "[M]eaningful judicial review is the most important factor" in this analysis.[5] *Id.* at 183 n.7.

The *Thunder Basin* framework confirms that this Court has jurisdiction. At step one, the CSRA's "text, structure, and purpose" do not display a "fairly discernible" intent to limit jurisdiction over Plaintiffs' claims. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012). The CSRA's tribunals—the Merit Systems Protection Board (MSPB) and the Federal Labor Relations Authority (FLRA)—are available to employees, unions, and employers. 5 U.S.C. § 7103(a)(1), (2). Nothing indicates that Congress intended to bar lawsuits by non-employees, such as States, challenging the dismantling of a federal agency. *Rhode Island v. Trump*, No. 1:25-CV-128-JJM-LDA, 2025 WL 1303868, at *7 (D.R.I. May 6, 2025) (CSRA "at most, contemplates the availability of judicial review of *federal employees'* disputes over employment decisions").

Even if this Court proceeded to step two, the result would be the same. First, the States would have no legal recourse at all if the CSRA applies. States differ from union or employee

---

[5] Defendants note that another Maryland district court recently held that CSRA channeling did not apply to a suit involving state harms from mass terminations of federal employees. Defs. Br. at 16 (discussing *Maryland v. U.S. Dep't of Agric.*, No. CV JKB-25-0748, 2025 WL 973159, (D. Md. Apr. 1, 2025), *stayed pending appeal*, No. 25-1248, 2025 WL 1073657 (4th Cir. Apr. 9, 2025)). While the Fourth Circuit stayed that decision, the panel majority did not mention the CSRA and said nothing that would cast doubt on the district court's CSRA ruling. To the extent *Maryland v. U.S. Department of Agriculture* is applicable, the district court's opinion is persuasive authority for why this case is not channeled by the CSRA. *See* 2025 WL 973159, at *16.

litigants who may "litigate their claims . . . through the statutory scheme" and "eventually obtain review and relief." *Am. Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748, 756 (D.C. Cir. 2019). States cannot bring a dispute before the FLRA or the MSPB. *See* 5 U.S.C. §§ 7123(a), 7703(a)(1). Because the CSRA "would foreclose all meaningful judicial review over the States' claims," jurisdiction is not precluded. *Rhode Island*, 2025 WL 1303868, at *7; *see also Wiley v. Kennedy*, No. 2:25-CV-00227, 2025 WL 1384768 at *11 (S.D.W. Va., May 13, 2025) ("It is patently absurd to suggest that an illegal agency action that includes termination of employees is unreviewable.").

Second, the States' claims about the dismantling of AmeriCorps are "wholly collateral" to the CSRA's administrative review scheme. *Thunder Basin*, 510 U.S. at 212. The States' claims "have nothing to do with" matters the CSRA's tribunals "regularly adjudicate" among unions, employees, and employers. *See Axon Enter. v. FTC*, 598 U.S. 175, 193 (2023). As Judge Pillard of the D.C. Circuit recently explained, channeling is inappropriate where employee terminations are implicated in a "challenge [to] defendants' unlawfully halting the work of [a federal agency] and shutting it down." *Widakuswara v. Lake*, 2025 WL 1288817, at *8 (D.C. Cir. May 3, 2025) (Pillard, J., dissenting), *panel decision stayed*, No. 25-5144 (D.C. Cir. May 7, 2025) (en banc).

Third, the relevant administrative tribunals lack the expertise to handle the States' claims— i.e., that Defendants are attempting to unlawfully dismantle AmeriCorps. *See Rhode Island*, 2025 WL 1303868, at *7 (holding that "constitutional and statutory challenges" to agency dissolution "are plainly outside the MSPB's expertise"). In sum, this Court may properly exercise jurisdiction.

## II.    Plaintiffs Are Likely to Succeed on Their Claims

### A.    Defendants Violated the Separation of Powers

Defendants cursorily argue that *Dalton v. Specter*, 511 U.S. 462 (1994) precludes Plaintiffs' Separation of Powers claim. This argument misses the mark. *Dalton* stands for the

limited proposition that not "*every* action by the President . . . in excess of his statutory authority is *ipso facto* in violation of the Constitution." 511 U.S. at 472 (emphasis added). By contrast, "*Dalton* is inapposite where the claim instead is that the presidential action . . . violates . . . a statute that delegates no authority to the President" to engage in the challenged action. *Chamber of Com. v. Reich*, 74 F.3d 1322, 1332–33 (D.C. Cir. 1996). That is the case here, as numerous statutes restrict the Executive's authority to curtail AmeriCorps' functions, and none authorize the President, much less Defendants, to unilaterally refuse to expend appropriations. *Dalton* does not preclude a claim "that the Executive has attempted to usurp Congress's power over the purse in violation of the separation of powers." *See, e.g.*, *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. 25-00400 (AHA), 2025 WL 752378, at *17 n. 17 (D.D.C. Mar. 10, 2025); *Does 1–26 v. Musk*, No. 25-0462-TDC, 2025 WL 840574, at *25 (D. Md. Mar. 18, 2025) (holding *Dalton* inapplicable when plaintiff asserts "elimination of [an agency] exceeds the President's Article II powers"), *stay pending appeal granted on other grounds*, No. 25-1273, 2025 WL 1020995, at *1 (4th Cir. Mar. 28, 2025). Plaintiffs properly allege Defendants' actions exceed their Constitutional authority.

On the merits, the Constitution requires Defendants to abide by Congressional appropriations, but they have not done so. Defendants provide no substantive response. Plaintiffs are accordingly likely to succeed on their Separation of Powers claim.

### B.    Defendants Violated the Administrative Procedure Act

#### 1.   *Plaintiffs Challenge Final Agency Action*

Plaintiffs also are likely to succeed on their APA claims. As an initial matter, there is no genuine dispute that the decision to dismantle AmeriCorps is final. Defendants admit AmeriCorps "has taken steps to reduce its activities to statutory minimums." Defs. Br. at 22. By "adopt[ing] a policy to . . . reduce [ ] statutory functions and personnel to the bare minimum," Defendants "t[ook]

an 'agency action.'"  *Rhode Island v. Trump*, 2025 WL 1303868, at *9 (quoting *Am. Fed'n of Teachers v. Bessent*, No. CV DLB-25-0430, 2025 WL 895326, at *13 (D. Md. Mar. 24, 2025), *stayed pending appeal*, No. 25-1282, 2025 WL 1023638, at *3 (4th Cir. Apr. 7, 2025)).  "'[T]here is no evidence that these decisions . . . are 'tentative or interlocutory,'" and "'legal consequences' flow from [them]" in the harms to States discussed above.  *Id.* (quoting *Bennett*, 520 U.S. at 178).

Defendants thus do not seriously dispute the finality of the decision to dismantle AmeriCorps but rather argue that the Plaintiff States have not challenged sufficiently "circumscribed, discrete agency actions" under *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004) ('*SUWA*'); *see* Defs.' Resp. at 16–18.  Yet the Supreme Court made clear in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990)—on which *SUWA* relied—that "if there is in fact some specific order or regulation, applying some particular measure across the board . . . it can of course be challenged under the APA."  *Id.* at 890 n.2.  Here, just as *Lujan* envisioned, Defendants made a "categorical" decision to dismantle AmeriCorps and implemented it with a series of "discrete final agency actions."  *See New York v. Trump*, 133 F.4th 51, 67 (1st Cir. 2025) (rejecting argument that OMB funding freeze was unreviewable under *SUWA*); *Rhode Island v. Trump*, 2025 WL 1303868, at *8.  Each of those actions and the decision that motivated them are reviewable as "rules" or "orders" under the APA.  *See* 5 U.S.C. § 551(4); *N.Y. Stock Exch. v. SEC*, 2 F.4th 989, 992 (D.C. Cir. 2021) (an "order is virtually any authoritative agency action other than a rule").  This Court should reject Defendants' attempt to evade judicial review by "tak[ing] so many unlawful agency actions in short order," and "putting the whole agency on the chopping block."  *See Widakuswara*, 2025 WL 1288817, at *9 (Pillard, J., dissenting).

2. *Defendants' Actions—Undisputedly Arbitrary and Capricious—Are Not Committed to Agency Discretion*

Defendants also argue that Plaintiffs' APA claims challenge mere "staffing decisions" which are "committed to agency discretion." Defs.' Resp. at 20–22. Not so. Defendants plainly intend to dismantle AmeriCorps through a combination of defunding and mass terminations. *Cf. Rhode Island v. Trump*, 2025 WL 1303868, at *14. Although "the pace and scope of the government's destructive efforts present the courts with remedial challenges in this and many other recent cases," *Widakuswara*, 2025 WL 1288817, at *9 (Pillard, J., dissenting), that does not mean an injunction would amount to "an extraordinary violation of the separation of powers." *Contra* Defs.' Resp. at 21. Defendants do not enjoy discretion "to simply disregard statutory responsibilit[ies]" by gutting a federal agency. *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993).

Defendants do not deny their actions were arbitrary and capricious: They do not argue that they "acted within a zone of reasonableness," "reasonably considered the relevant issues," or "reasonably explained the decision[s]." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Defendants' mass firing of service members and staff, cancellation of contracts, and closure of programs thus stand unexplained, and Plaintiffs are likely to succeed on their arbitrary and capricious claim.

### 3. *Defendants Actions Are Contrary to Law*

In their memorandum, Plaintiffs also explained how Defendants acted contrary to law, violating at least four separate statutes in dismantling AmeriCorps. Defendants' responses to these clear breaches are either missing or meritless.

First, Defendants do not dispute that binding appropriations law requires AmeriCorps to conduct notice and comment rulemaking for "any significant changes to program requirements, service delivery or policy." Defs.' Resp. at 22. Defendants nonetheless argue that they did not change "program requirements," "'service delivery' or 'service policy' requirements." *Id.* This contention strains credulity. Defendants necessarily altered AmeriCorps "program requirements"

and "policy" when they decided to terminate more than 1,000 programs on the basis that they failed to effectuate unspecified "agency priorities," notwithstanding that the programs conformed to the models identified in the national service laws.  *Compare* Almond Decl., Doc. No. 5-42, ¶ 13 (describing closure of Washington State's Vet Corps) *with* 42 U.S.C. § 12572(a)(4)(A) ("The recipient may carry out national service programs through a Veterans Corps that identifies and meets unmet needs of veterans and members of the Armed Forces who are on active duty . . . .").  Defendants also drastically altered "service delivery" by immediately cancelling these service programs and effectively terminating thousands of associated AmeriCorps service members, along with all NCCC members, many VISTA members, and most of the agency's staff.  All of these "significant changes" required notice-and-comment rulemaking.

Second, federal law prohibits Defendants' purported change in AmeriCorps' priorities without advance notice or during a fiscal year.  42 U.S.C § 12572(f)(2); *see also id.* § 12572(f)(3)(B) (requiring regulations ensuring equitable treatment of programs that "would be adversely affected by annual revisions in such national service priorities").  Yet Defendants contend that this safeguard applies only to "potential applicants" for funding, rather than actual grantees like Plaintiff States.  Defs.' Br. at 23.  This is nonsensical.  Plaintiffs applied for and received funding for the current fiscal year, at which time they were legally entitled to advance notice of "any" national service priorities that would be in effect this fiscal year.  The same result obtains for Defendants' bizarre claim of a distinction between "national service priorities" and "agency priorities."  *Id.*  Governing law makes clear that AmeriCorps' "national service priorities" *are* AmeriCorps' agency priorities.  National service priorities are established "to concentrate national efforts on meeting human, educational, environmental, or public safety needs *and to achieve the other purposes of this chapter*."  42 U.S.C § 12572(f)(1)(A) (emphasis added).

Because they govern every purpose of the statute that authorizes AmeriCorps, AmeriCorps' national service priorities cover the field, leaving no room for conflicting "agency priorities."[6]

Third, Defendants' mass grant terminations violate Congress's instructions on funding allocations. In particular, Defendants' cuts reduced Plaintiff States' formula-based funding well below the minimum allocation required by statute. *See* 42 U.S.C. § 12581(e)(2)–(3); *see also* 45 C.F.R. § 2521.30(a)(2)–(3). Defendants offer no response whatsoever and have therefore waived any argument on this point. *See Hardison v. Healthcare Training Sols.*, No. PWG-15-3287, 2017 WL 2276840, at *1 n.3 (D. Md. May 25, 2017).

Finally, Defendants failed to afford Plaintiffs notice and an opportunity to be heard before their AmeriCorps programs were terminated. Defendants assert that such due process is required only when funding is cancelled due to a material failure to comply with the "applicable terms and conditions," and instead, here, "the agency terminated the grants because of a shift in AmeriCorps priorities." Defs.' Resp. at 24. But failure to abide by terms and conditions is the *only* authorized basis for terminating AmeriCorps grants mid-year. *See* 42 U.S.C. § 12636(a)(1). In addition, Congress hardly would impose procedural guardrails on terminating a grant for cause but simultaneously permit the agency to cancel grants without cause at any time. *See United States v. Nixon*, 130 F.4th 420, 431 (4th Cir. 2025) ("[W]here a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded.") (quoting *United States v. Roane*, 51 F.4th 541, 548 (4th Cir. 2022)).

## III.    The Balance of the Equities Weighs in Plaintiffs' Favor

The balance of the equities could not be starker. Without relief, Plaintiff States will

---

[6] In addition, AmeriCorps' Board "ha[s] responsibility for setting overall policy for the Corporation," 42 U.S.C. § 12651b(g), but Defendants have not specifically identified *any* changed policies or priorities, much less ones promulgated by AmeriCorps' Board.

continue to suffer enormous injury through loss of AmeriCorps members who work directly for State institutions, causing State-provided services to suffer as students lose tutors, elderly persons are deprived of care, and natural disasters victims go without assistance.  Pls.' Mem. at 18–29.

By contrast, Defendants contend that a preliminary injunction is not in the public interest because it would "disrupt the agencies efforts to comply with Executive Orders 14,222 and 14,210, and act as responsible stewards of public funds."  Defs' Resp. at 28.  But the public interest cannot support drastic "efforts" to slash service programs, especially since Defendants entirely fail to explain the reasoning for their actions.  *See Rhode Island v. Trump*, 2025 WL 1303868, at *17.  Finally, contrary to Defendants' suggestions otherwise, the federal government has long possessed tools to recoup overpayments from states.  *See, e.g.*, *Bell v. New Jersey*, 461 U.S. 773 (1983).

## IV.    The Court Should Decline to Require a Bond

The Court should exercise its discretion to waive the bond required under Rule 65(c). A district court has "the discretion to . . . waive the security requirement," *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013), or "set a bond amount of zero . . . to ensure judicial review of administrative action."  *Md. Dep't of Human Res. v. U.S. Dep't of Agric.*, 976 F.2d 1462, 1483 n.23 (4th Cir. 1992).  "[M]ultiple courts . . . have recently declined to require plaintiffs to post any bond as a condition of obtaining an injunction against agencies or officers of the federal government," lest litigants be "deterr[ed] . . . from pursuing their right to judicial review of unlawful executive action."  *League of United Latin Am. Citizens v. Exec. Off. of the President*, No. 25-0946 et al., 2025 WL 1187730, at *62 (D.D.C. Apr. 24, 2025) (collecting cases); *see also, e.g.*, *Am. Fed'n of State, County & Mun. Emps., AFL-CIO v. SSA*, No. CV ELH-25-0596, 2025 WL 1206246, at *73 (D. Md. Apr. 17, 2025) (requiring a "nominal bond" of $250 per plaintiff).  This Court likewise should waive a bond or require a nominal amount such as $0.

Dated:  May 16, 2025                    Respectfully submitted,


**ANTHONY G. BROWN**
ATTORNEY GENERAL OF MARYLAND

By: */s/ Keith M. Jamieson*
Keith M. Jamieson (D. Md. Bar. No. 31543)
Virginia Williamson (D. Md. Bar. No. 31472)
   *Assistant Attorneys General*
Federal Accountability Unit
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland  21202
(410) 576-6960
kjamieson@oag.state.md.us


*Counsel for the State of Maryland*

**ROB BONTA**
ATTORNEY GENERAL OF CALIFORNIA

By: */s/ Ezra Kautz*
Ezra Kautz*
   *Deputy Attorney General*
Joel Marrero*
William H. Downer*
   *Supervising Deputy Attorneys General*
Brian Bilford*
   *Deputy Attorney General*
Michael L. Newman*
   *Senior Assistant Attorney General*
California Department of Justice
1300 I Street
Sacramento, CA  95814
(916) 210-6346
Joel.Marrero@doj.ca.gov
William.Downer@doj.ca.gov
Ezra.Kautz@doj.ca.gov
Brian.Bilford@doj.ca.gov
Michael.Newman@doj.ca.gov


*Counsel for the State of California*

**KATHLEEN JENNINGS**
ATTORNEY GENERAL OF DELAWARE

By: */s/ Ian R. Liston*
Ian R. Liston*
   *Director of Impact Litigation*
Vanessa L. Kassab*
   *Deputy Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE  19801
(302) 683-8899
Ian.Liston@delaware.gov


*Counsel for the State of Delaware*

**PHILIP J. WEISER**
ATTORNEY GENERAL OF COLORADO

By: */s/ Sarah H. Weiss*
David Moskowitz*
   *Deputy Solicitor General*
Sarah H. Weiss*
   *Senior Assistant Attorney General*
Kyle M. Holter*
Sam Wolter*
   *Assistant Attorneys General*
Colorado Office of the Attorney General
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
david.moskowitz@coag.gov
sarah.weiss@coag.gov
kyle.holter@coag.gov
samuel.wolter@coag.gov


*Counsel for the State of Colorado*

**KRISTIN K. MAYES**
ATTORNEY GENERAL OF ARIZONA

By:  */s/ Joshua A. Katz*
Joshua A. Katz*
   *Assistant Attorney General*
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, Arizona 85004
(602) 542-3333
Joshua.Katz@azag.gov

*Counsel for the State of Arizona*

**BRIAN L. SCHWALB**
ATTORNEY GENERAL FOR THE DISTRICT OF
   COLUMBIA

By: */s/ Andrew C. Mendrala*
Andrew C. Mendrala*
   *Assistant Attorney General*
Public Advocacy Division
Office of the Attorney General for the District
   of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 724-9726
Andrew.mendrala@dc.gov

*Counsel for the District of Columbia*

**KWAME RAOUL**
ATTORNEY GENERAL OF ILLINOIS

By: */s/ Abigail R. Durkin*
Abigail R. Durkin*
   *Assistant Attorney General II, Special
   Litigation Bureau*
Cara Hendrickson*
   *Assistant Chief Deputy Attorney General*
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603
Tel. (312) 814-3000

**WILLIAM TONG**
ATTORNEY GENERAL OF CONNECTICUT

By: */s/ Andrew Ammirati*
Andrew Ammirati*
   *Assistant Attorney General*
Connecticut Office of the Attorney General
165 Capitol Ave
Hartford, CT 06106
(860) 808-5090
Andrew.Ammirati@ct.gov

*Counsel for the State of Connecticut*

**ANNE E. LOPEZ**
ATTORNEY GENERAL OF HAWAIʻI

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
   *Special Assistant to the Attorney General*
Kalikoʻonālani D. Fernandes*
   *Solicitor General*
Hawaiʻi Department of the Attorney General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*

**OFFICE OF THE GOVERNOR** *ex rel.*
**ANDY BESHEAR**
IN HIS OFFICIAL CAPACITY AS GOVERNOR OF
THE COMMONWEALTH OF KENTUCKY

By:  */s/ S. Travis Mayo*
S. Travis Mayo*
   *General Counsel*
Taylor Payne*
   *Chief Deputy General Counsel*
Laura C. Tipton*
   *Deputy General Counsel*
Office of the Governor

Abigail.Durkin@ilag.gov
Cara.Hendrickson@ilag.gov

*Counsel for the State of Illinois*

700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

*Counsel for the Office of the Governor*

**AARON M. FREY**
ATTORNEY GENERAL OF MAINE

By: */s/ Sarah A. Forster*
Sarah A. Forster*
  *Assistant Attorney General*
Office of the Attorney General
6 State House Station
Augusta, ME  04333-0006
Tel.:  (207) 626-8800
Fax:  (207) 287-3145
Sarah.Forster@maine.gov

*Counsel for the State of Maine*

**ANDREA JOY CAMPBELL**
ATTORNEY GENERAL OF MASSACHUSETTS

By: */s/ Katherine Dirks*
Katherine Dirks*
  *Chief State Trial Counsel*
Jonathan Green
  *Division Chief*
Veronica Zhang
  *Assistant Attorney General*
  *Non-Profit Organizations / Public Charities*
Massachusetts Office of the Attorney General
1 Ashburton Pl. Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**DANA NESSEL**
ATTORNEY GENERAL OF MICHIGAN

By: */s/ Neil Giovanatti*
Neil Giovanatti*
Alexus Ringstad*
  *Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
RingstadA@michigan.gov

*Counsel for the People of the State of Michigan*

**KEITH ELLISON**
ATTORNEY GENERAL OF MINNESOTA

By:*/s Liz Kramer*
Liz Kramer*
  *Solicitor General*
Minnesota Attorney General's Office
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

*Counsel for the State of Minnesota*

**AARON D. FORD**

**MATTHEW J. PLATKIN**

ATTORNEY GENERAL OF NEVADA

By: */s/ Heidi Parry Stern*
Heidi Parry Stern*
  *Solicitor General*
Office of the Nevada Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, NV 89101
HStern@ag.nv.gov

*Counsel for the State of Nevada*


**RAÚL TORREZ**
ATTORNEY GENERAL OF NEW MEXICO

By: */s/ James W. Grayson*
James W. Grayson*
  *Chief Deputy Attorney General*
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM  87504-1508
(505) 490-4060
jgrayson@nmdoj.gov

*Counsel for the State of New Mexico*


**JEFF JACKSON**
ATTORNEY GENERAL OF NORTH CAROLINA

**LAURA HOWARD**
CHIEF DEPUTY ATTORNEY GENERAL

By */s/ Daniel P. Mosteller*
Daniel P. Mosteller*
  *Associate Deputy Attorney General*
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
(919) 716-6026
dmosteller@ncdoj.gov

ATTORNEY GENERAL OF NEW JERSEY

*/s/ Jessica L. Palmer*
Jessica L. Palmer**
Lauren E. Van Driesen**
  *Deputy Attorneys General*
Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-4607
Jessica.Palmer@law.njoag.gov

*Counsel for the State of New Jersey*


**LETITIA JAMES**
ATTORNEY GENERAL OF NEW YORK

By: */s/ Jessica Ranucci*
Jessica Ranucci*
  *Special Counsel, Federal Initiatives*
Rabia Muqaddam*
  *Special Counsel for Federal Initiatives*
Office of the Attorney General
28 Liberty St.
New York, NY 10005
(929) 638-0447
Jessica.ranucci@ag.ny.gov
rabia.muqaddam@ag.ny.gov

*Counsel for the State of New York*


**DAN RAYFIELD**
ATTORNEY GENERAL OF OREGON

By: */s Sadie Forzley*
Sadie Forzley*
  *Senior Assistant Attorney General*
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880
sadie.forzley@doj.oregon.gov

*Counsel for the State of Oregon*

*Counsel for the State of North Carolina*

**JOSH SHAPIRO**
IN HIS OFFICIAL CAPACITY AS GOVERNOR OF
THE COMMONWEALTH OF PENNSYLVANIA

By: */s/ Kenneth L. Joel*
Kenneth L. Joel*
   *Deputy General Counsel*
Benjamin Holt*
   *Chief Counsel*
   *Pennsylvania Department of Labor*
Melissa Murphy*
   *Senior Counsel*
   *Pennsylvania Department of Labor*
Governor's Office of General Counsel
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(717) 649-8669
kennjoel@pa.gov

*Counsel for Governor Josh Shapiro*

**CHARITY R. CLARK**
ATTORNEY GENERAL OF VERMONT

By: */s/ Jonathan T. Rose*
Jonathan T. Rose*
   *Solicitor General*
Office of the Vermont Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3171
Jonathan.rose@vermont.gov

*Counsel for the State of Vermont*

**JOSHUA L. KAUL**
ATTORNEY GENERAL OF WISCONSIN

By: */s/ Charlotte Gibson*

**PETER F. NERONHA**
ATTORNEY GENERAL OF RHODE ISLAND

By: */s/ Kyla Duffy*
Kyla Duffy*
   *Special Assistant Attorney General*
Rhode Island Attorney General's Office
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2809
kduffy@riag.ri.gov

*Counsel for the State of Rhode Island*

**NICHOLAS W. BROWN**
ATTORNEY GENERAL OF WASHINGTON

By: */s/ Abby Kahl*
Abigail Kahl*
Andrew R.W. Hughes*
   *Assistant Attorneys General*
Office of the Attorney General
2425 Bristol Court SW
Second Floor
PO Box 40117
Olympia, WA 98504
360-534-4864
Abigail.Kahl@atg.wa.gov
Andrew.Hughes@atg.wa.gov

*Counsel for the State of Washington*

Charlotte Gibson*
  *Assistant Attorney General*
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI  53707
(608) 957-5218 (phone)
(608) 294-2907 (fax)

*Counsel for the State of Wisconsin*

*\* Pro hac vice*
*\*\* Motion for admission pro hac vice forthcoming*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 16, 2025, I filed the foregoing document via CM/ECF and thereby served all parties who have appeared through counsel on the Court's electronic docket.

For Plaintiff States whose counsel's motions for admission pro hac vice are forthcoming, I served the foregoing document via email to those counsel.

Respectfully submitted,

*/s/ Keith M. Jamieson*
Keith M. Jamieson (D. Md. Bar. No. 31543)
  *Assistant Attorney General*
Federal Accountability Unit
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland  21202
(410) 576-6960
kjamieson@oag.state.md.us

1